SCHMIDT, Commissioner of Revenue, Appellant v.
PHILLIPS & SONS, Respondent

(195 N.W.2d 400)

(File No. 10835. Opinion filed March 7, 1972)
Order denying petition for rehearing 4-14-72

**Gordon Mydland,** Atty. Gen., **John Dewell,** Asst. Atty Gen., Pierre, for appellant.

**M. T. Woods, Woods, Fuller, Shultz & Smith,** Sioux Falls, for respondent.

WOLLMAN, Judge.

This is an appeal by the State of South Dakota from a decision of the circuit court for the second judicial circuit which reversed an order of the commissioner of revenue (commissioner) denying Ed Phillips & Sons Company (respondent) permission to acquire the corporate stock of Sodak Distributing Company (Sodak) a South Dakota Class B intoxicating liquor wholesaler.

In July of 1969, R. P. Brzica, Edna Brzica, and Stephen M. Brzica, the owners of all of the shares of stock of Sodak, filed an application with the South Dakota Commissioner of Revenue pursuant to regulation 501.302 of the Department of Revenue's Alcoholic Beverage Regulations to transfer the corporate stock of Sodak to Ed Phillips & Sons Company, a Minnesota corporation having its principal place of business in Minneapolis, Minnesota.

Pursuant to notice, the commissioner held a hearing on the application on October 24, 1969, at which testimony was taken and evidence received.

The commissioner entered findings of fact and conclusions of law and an order denying permission to transfer the stock, where-upon respondent filed a petition for review under the provisions of SDCL 1-26. The circuit court reversed the commissioner's decision and remanded the case to the commissioner with directions to approve and authorize the transfer of the stock of Sodak to respondent.

There was introduced at the hearing before the commissioner in October of 1969 the record of the proceedings had by the commissioner's predecessor (then called the Director of Licensing) in 1952 on the application of the above named members of the Brzica family for a South Dakota Class B liquor wholesaler's license. That record, together with the testimony taken at the October 1969 hearing, reveals that in 1935 a South Dakota liquor wholesaler's license was issued to one Louis Koplow and his brothers doing business in Sioux Falls, South Dakota, under the name of Koplow Brothers, Inc. It appears that this business was originally organized as a partnership but was shortly thereafter incorporated as

Koplow Brothers, Inc., some 70% of the ownership of which ultimately became vested in Ed Phillips & Sons Company, respondent in the present proceedings.[1]

In April of 1950 the Alcohol Tax Unit of the United States Department of Revenue (then the Bureau of Internal Revenue) started an investigation of the activities of Koplow Brothers, Inc. concerning possible violations of the Federal Alcohol Administration Act. It was determined that Koplow Brothers, Inc.'s salesmen were guilty of commercial bribery in that they had given cash, merchandise and alcoholic liquors to managers of municipal liquor stores in South Dakota as an inducement to secure orders for Koplow Brothers, Inc. from these stores. The total value of these gifts to managers or other persons connected with the municipal liquor stores during 1949 and until about July 1, 1950, totaled approximately $87,000. Koplow Brothers, Inc. reached an administrative settlement with the federal government by the terms of which Koplow Brothers, Inc. paid some $87,000 to the federal government.

The South Dakota Department of Revenue also conducted an investigation of these activities by Koplow Brothers, Inc., the result of which was that the members of the Brzica family were permitted to acquire a Class B liquor wholesaler's license in 1952 only after the Koplows and respondent divested themselves completely of any and all ownership interest in Sodak. At the conclusion of the proceedings involving the suspension and reinstatement of the licenses of Koplow Brothers, Inc.'s liquor salesmen in 1952, the then South Dakota Attorney General and the Director of Licensing made statements to the effect that no one who was connected with respondent at the time of the violation of the liquor laws by Koplow Brothers, Inc. should ever be permitted to engage in the liquor business in South Dakota. These statements were made a part of the record at the hearing in October of 1969.

---

1. As of July 1, 1969 the Phillips foundation, a nonprofit charitable corporation having its office in Minneapolis, Minnesota, held 283,400 of the 548,000 outstanding shares of Ed Phillips & Sons Company. L. E. Phillips Charity Inc., a nonprofit charitable corporation having its office in Eau Claire, Wisconsin, held 117,000 shares in the company. The bulk of the remainder of the shares is held either outright by members of the Phillips family or in trust for members of the Phillips family.

At the 1952 hearing Mr. Jay Phillips, who was then president of respondent, testified that he had no knowledge of the violations of the liquor laws by Koplow Brothers, Inc. The attorney for respondent, who at the time of the October 1969 hearing was secretary and treasurer of the company, testified in 1952 that he had no knowledge of the violations by Koplow Brothers, Inc., notwithstanding the fact that he was one of the trustees of the trusts that owned a substantial interest in Koplow Brothers, Inc. and notwithstanding the fact that he had prepared the corporate minutes for Koplow Brothers, Inc. and sent them to Sioux Falls to be signed and for at least a portion of the time in question kept the corporate records of Koplow Brothers, Inc. in his law office in Minneapolis.

In the same vein, the certified public accountant who audited the books and records of respondent and Koplow Brothers, Inc. during the period of the violations in 1949 and 1950 testified at the 1952 hearing that he had seen nothing in the records of Koplow Brothers, Inc. to cause him to believe that the company was violating any of the federal or state liquor laws even though he had noted the substantial increase in the size of the Koplow Brothers, Inc.'s sample account. The sample account listed the quantity of liquor that Koplow Brothers, Inc.'s salesmen were purportedly using legitimately to introduce and promote new brands of liquors in the retail liquor stores in South Dakota. The then federal regulations permitted the use of such samples only under rather limited circumstances. In fact, the salesmen were using these so-called samples to bribe the managers of the municipal liquor stores to buy their liquor from Koplow Brothers, Inc.

In the 1952 hearing, Louis Koplow, who was president and manager of Koplow Brothers, Inc. during the time of the violations, testified that he took orders from and consulted with Jay Phillips and that he never considered himself in control as such of Koplow Brothers, Inc. He testified that the decisions as to the dividends paid by Koplow Brothers, Inc. and the various lines of liquor that would be handled by Koplow Brothers, Inc. were made in Minneapolis by those persons who controlled respondent. In testifying about his relationship with Jay Phillips during the 17 years from 1935 until 1952, Mr. Koplow stated that "I would say if Mr. Phillips

wanted me to be out, I would be out." In response, Jay Phillips and the attorney for respondent flatly denied that they or any member of respondent company exercised any such control over Louis Koplow and the other members of the Koplow family who owned stock in Koplow Brothers, Inc.

At the outset of the hearing in October of 1969, the commissioner of revenue said:

"I also note that a former Commissioner of Revenue, not my immediate predecessor, had decreed that all operations of Sodak Distributors should be arms length transactions, as far as Ed Phillips and Sons Company is concerned. I recognize at least, some of the conditions under which these statements were made and something of the conditions which, I believe, existed in the liquor business in South Dakota at that time. Conditions we don't want again revisited on the state or its people but having view and cognizance of all of these factors I believe, in this proceeding that the case rests squarely on the proponents of this transfer, both buyer and seller, to convince me that I would not be making a mistake in exercising the discretion that I have in this matter, in favor of allowing this stock to be transferred to the Phillips Company."

The commissioner permitted the proponents of the transfer wide latitude in introducing evidence concerning the activities of respondent and of the good character of those connected with the company. Much evidence was introduced showing that Jay Phillips has long been active in community and civic work and that he has given generously to numerous charitable and philanthropic organizations.

The following were among the findings of fact entered by the commissioner:

"V.

"In the Koplow matter certain irregular and illegal acts were carried out under the aegis of Ed Phillips and

Sons Company. The officers of which now claim not to have known or have questioned such practices although the records and audits of the Koplow Brothers Company disclose the same.

## "VI.

"The Ed Phillips and Sons Company as it exists to-day with its organizational structure of corporation, foundation and trusteeships is almost intact in its identity of officers, principals and stockholders with its situation at the time of, and during the events chronicled in the Koplow Brothers matter."

The commissioner's conclusions of law stated in part:

## "VII.

"The prior activities and interest of Ed Phillips and Sons, Company, Inc., in South Dakota and its complexion, organization and financial structure, in the face of the whole record, and taken with the other matters announced in the memorandum decision, (constitute) sufficient grounds for denial of the stock transfer application."

The contract for the sale of stock of Sodak to respondent provided in part that unless the Brzicas so consented in writing, respondent could not sell any interest in Sodak to any resident of South Dakota for a period of five years after the closing of the contract. In addition, the contract provided that respondent should employ R. P. Brzica for a period of five years in the same capacity as he functioned as president, general manager and majority stockholder of Sodak at the time of sale to respondent.

The commissioner held that the civil rights of South Dakota would be infringed by the moratorium and prohibition of their right of purchase of the stock of Sodak during the five-year period provided in the contract.

The circuit court reviewed the case on the certified record made before the commissioner. SDCL 1-26-33. We quote the following from the court's finding of fact:

"5.

"With respect to suggestions, insinuations or charges that Ed. Phillips & Sons Co. in the year 1952 or prior thereto was involved in transactions described as 'commercial bribery' as a stockholder in the corporation then known as 'Koplow Brothers, Inc.', no evidence has been received here and there is no proof in this record supporting any such insinuation or charge so far as the stockholders (of) Ed. Phillips & Sons Co. are concerned; i. e. there is no evidence in this record showing that Ed. Phillips & Sons Co. or its officers had any knowledge of the transactions described as 'commercial bribery' in the proceeding had before the Division of Licensing of the State of South Dakota conducted before W. R. Wilder, Director of Licensing of the State of South Dakota in the year 1952, or that its principal officers at that time had any such knowledge, or that either Ed. Phillips & Sons Co. or any of the officers of the said corporation participated in any such activities.

"6.

"It is found and decided that Ed. Phillips & Sons Co. and its managing officers and directors are responsible and reliable persons of good moral character and of good repute and are eligible to acquire the stock and carry on the business of Sodak Distributing Company; **and there is no substantial evidence to the contrary.**" (emphasis supplied)

We believe that the circuit court erred in reversing the commissioner's decision. First, from the court's memorandum decision of May 8, 1970, which was expressly made a part of the court's findings of fact and conclusions of law, and from finding of fact

6 set forth above, it is clear that the court reached its decision on the basis that the only requirements that must be met by a corporate applicant for a Class B liquor wholesaler license are those set forth in SDCL 35-4-26:

"Any Class * * * B * * * licensee under this chapter must be, if an individual, a person of good moral character, never convicted of a felony, and, if a corporation, the managing officers thereof must have like qualifications."

SDCL 35-4-31 provides that:

"Except as specified in §§ 35-4-32 and 35-4-33, all applications for licenses shall be submitted in the first instance to the commissioner of revenue, who shall have discretion to approve or disapprove the same."

We agree with the commissioner's argument that if the requirements set forth in SDCL 35-4-26 are exclusive and that if one meeting those requirements is automatically entitled to a Class B liquor wholesaler's license as a matter of law, then the statutory discretion granted to the commissioner of revenue in SDCL 35-4-31 is meaningless. We cannot believe that the legislature intended to divest the commissioner of all discretion in dealing with a matter so affected with public interest and so deeply involved in the question of public health, safety and morals as the licensing of distributors of liquor within the state. In this regard we note that the legislature by Sec. 12, Ch. 211, Laws of 1971 (SDCL 35-2-1.1) has clarified the scope of the commissioner's discretion as follows:

"All applications under this title for manufacturer, distiller, wholesaler, solicitor, transporter, carrier and dispenser licenses, and all applications for licenses to be issued to counties and municipalities shall be initially submitted to the commissioner who shall have discretion to approve or disapprove the applications depending on

whether he deems the applicant a suitable person to hold such license and whether he considers the proposed location suitable."

██ ██ We think that the situation here is analogous to that found in the case of Randall's-Yankton, Inc. v. Ranney, 81 S.D. 283, 134 N.W.2d 297. In reaching this conclusion we have given due consideration to our decision in Affiliated Distillers Brands Corp. v. Gillis, 81 S.D. 44, 130 N.W.2d 597. That case dealt primarily with the authority of the commissioner to adopt rules and regulations and to impose them upon those already engaged in the distribution and sale of liquor. The opinion notes that the commissioner is in a superior position to promote compliance by licensees with the law in the conduct of their business and recognizes that the commissioner can validly promote such compliance through proceedings seeking revocation or suspension of liquor licenses. Likewise, we believe that the commissioner is empowered to regulate the liquor industry within the state by denying a license to those to whom in his sound discretion, based upon substantial evidence in the record, it would not be in the best interests of the people of this state to grant a license. We believe that there is a distinction between proceedings involving the revocation of an existing license and proceedings involving the denial of an application for a license. The burden of proof may properly be placed upon the applicant in application proceedings but not in revocation proceedings. Martin v. Alcoholic Beverage Control Appeals Board, 52 Cal.2d 259, 341 P.2d 291.

We believe that the trial court erred in not applying the correct standard of review to the commissioner's determination. SDCL 1-26-36 reads in part as follows:

"The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial

rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

\*    \*    \*    \*    \*    \*    \*    \*

"(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record \*   \*   \*"[2]

■ The court's finding of fact number 6 set forth above states that there is no substantial evidence contrary to the court's finding. This is not the correct standard of review. Under SDCL 1-26-36 the circuit court is not to substitute its judgment for that of the commissioner as to the weight of the evidence on questions of fact. The standard of review is not whether there is substantial evidence contrary to the court's finding, but whether there is substantial evidence to support the commissioner's finding.[3]

Section 10(e) of the Administrative Procedure Act, 5 U.S.C.A. § 706(2) (E), gives the reviewing court authority to "set aside agency action, findings, and conclusions found to be \*   \*   \* (E) unsupported by substantial evidence \*   \*   \*." In the case of Consolo v. Federal Maritime Commission, 383 U.S. 607, 86 S.Ct. 1018, 16 L. Ed.2d 131, the court of appeals had decided that a finding by the Maritime Commission "ignores \*   \*   \* the substantial weight of the evidence" and held that the Commission abused its discretion because "of the substantial evidence showing that (the reparations) would be inequitable." In reversing the court of appeals the Supreme Court, speaking through Mr. Justice White, stated that:

"In effect, the standard of review applied and articulated by the Court of Appeals in this case was that if 'substan-

---

2. As amended by Section 28, Chapter 8, Laws of 1972 (House Bill 642), SDCL 1-26-36(5) reads as follows: "(5) Unsupported by substantial evidence on the whole record."

3. In McKinnon v. State Banking Commission, 78 S.D. 407, 103 N.W.2d 179, 182, we said that " 'substantial evidence' means such relevant and competent evidence as a reasonable mind might accept as adequate to support a conclusion." Section 3, Chapter 8, Laws of 1972 (House Bill 642), amends SDCL 1-26-2 by adding thereto subsection (8) which reads as follows: " 'Substantial evidence'; any evidence a reasonable mind might accept as adequate to support a conclusion."

tial evidence' or 'the substantial evidence' supports a conclusion contrary to that reached by the Commission, then the Commission must be reversed. This standard is not consistent with that provided by the Administrative Procedure Act." 383 U.S. at 618, 86 S.Ct. at 1026, 16 L.Ed. 2d at 140.

Likewise, we believe that the circuit court in this case adopted the erroneous standard of review applied and articulated by the court of appeals in the Consolo case. See McKinnon v. State Banking Commission, 78 S.D. 407, 103 N.W.2d 179, and 4 Davis, Administrative Law Treatise, Chapter 29, and 1970 Supplement.

The circuit court's finding of fact No. 5 set forth above states that there is no evidence or proof in the record showing that Ed Phillips & Sons Company or its officers had any knowledge of the transactions described as "commercial bribery" in the 1952 licensing proceedings or that Ed Phillips & Sons Company or any of its officers participated in any such activities. This presupposes that the commissioner made such a finding. In fact, the commissioner's finding of fact number V states that the records and audits of the Koplow Brothers, Inc. disclosed the irregular and illegal practices which were carried out under the aegis of Ed Phillips & Sons Company. Our careful review of the whole record leads us to conclude that the commissioner's finding in this regard was not clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. SDCL 1-26-36(5); SDCL 15-6-52(a); In re Estate of Hobelsberger, 85 S.D. 282, 181 N. W.2d 455. In effect, the circuit court reviewed the record in the light of a finding that the commissioner did not specifically make. The trial court's action in doing so may very well have been the result of its implicit holding in its finding of fact number 5 that unless Ed Phillips & Sons Company and its corporate officers and executives had such actual knowledge of or participated in the illegal activities of Koplow Brothers, Inc. the commissioner would have no statutory discretionary authority to deny the application for transfer of the stock of Sodak. Such an implicit finding would be in accord with the trial court's memorandum opinion that the only requirements precedent to the issuance of a license are that

the managing officers of the corporation must be persons of good moral character, never convicted of a felony. As we have already stated, the commissioner has a broader area of inquiry upon which to base the exercise of the statutory discretion granted him in SDCL 35-4-31.

Respondent contends that to deny it permission to acquire the stock of Sodak and to obtain a Class B license without proof that respondent's managing officers had actual knowledge of or participated in the illegal activities carried on by Koplow Brothers, Inc.'s managers and employees would amount to a bill of attainder based upon the remarks made in 1952 by the then Director of Licensing with respect to the future status of respondent as a Class B wholesaler in South Dakota. Moreover, it is urged that such a denial would necessarily be based upon the imputed knowledge of corporate stockholders and would amount to guilt by association. We do not believe that these claims are valid in the context of the circumstances of this case. The commissioner's perceptive memorandum decision of November 13, 1969, which was expressly made a part of his findings of fact, conclusions of law and decision, refutes the argument that his decision was based upon anything other than a careful review of all of the facts and evidence available to him, including the sworn testimony taken at the 1952 license hearing.

In summary, then, we believe that the commissioner's conclusion that it would not be in the best interest of the liquor industry as a whole and of the citizens of the State of South Dakota to permit respondent to enter the wholesale liquor market in South Dakota is not clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. We believe that it was within the scope of the commissioner's statutory discretion to deny the application for transfer of ownership in Sodak to the some corporation that once permitted the managers and employees of a corporation of which it owned 70% of the stock to engage in commercial bribery to an extent unprecedented in the liquor industry in this state. It is for the commissioner, not the circuit court nor this court, to draw such legitimate inferences and conclusions as may be supported by the record as a whole. As

we said in Affiliated Distillers Brands Corp. v. Gillis, supra, the commissioner is in a superior position to promote compliance with our liquor laws. Because of his intimate knowledge of the day to day operations of the retail and wholesale liquor business within the state, the commissioner is better able than the trial court to note and evaluate nuances in the testimony and documentary evidence.

Because we have concluded that the commissioner's denial of the transfer of stock to Ed Phillips & Sons Company was within his statutory discretionary authority and was based upon findings of fact which were not clearly erroneous, we find it unnecessary to consider the matter of the restriction on sale discussed in the briefs.

The judgment of the circuit court is reversed and the case is remanded with instruction to reinstate the findings, conclusions and order of the Commissioner of Revenue.

HANSON, P. J., and BIEGELMEIER and WINANS, JJ., concur.

DOYLE, J., not participating.