Roger KIERSTEAD, Grievant and Appellant,

v.

CITY OF RAPID CITY, Employer and Respondent.

No. 11704.

Supreme Court of South Dakota.

Dec. 22, 1976.

Robert L. O'Connor, Sioux Falls, Harry H. Smith, Smith & Smith, Sioux City, Iowa, for grievant and appellant.

W. A. McCullen, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for employer and respondent.

RIES, Circuit Judge.

Grievant-appellant Roger Kierstead filed a grievance with the South Dakota Depart-

ment of Manpower Affairs, Division of Labor and Management Relations, alleging that he had been fired from his position as patrolman for the City of Rapid City, South Dakota, because he had completed an application for leave without pay incorrectly and requesting in the application that he wanted "to be reinstated—records put back in order—back pay—salary for July and months until I am reinstated." While language used in the statement of grievance concerned itself only with reinstatement and back pay, at the hearing before the Deputy Director, the grievant testified that when he was hired by the acting Chief of Police for the city in September of 1973, the Chief promised him a monthly wage of $575, which was $50 more per month than the rate paid "rookie" patrolmen, because grievant had had prior experience in law enforcement. At the hearing before the Deputy Director, in addition to the request for reinstatement, grievant requested that he be paid the additional $50 per month that had been promised him at the time of hiring but which he had never received.

A hearing on the grievance was held before the Deputy Director of the Division of Labor and Management Relations and the Director made findings of fact and conclusions of law and an order requiring that the grievant be immediately reinstated as a patrolman, that he not be denied any advancement in pay, position or other benefits he might have attained had he been in continuous service to the date of reinstatement, that he be paid all back pay from the date of his termination to the day before his reinstatement mitigated by any salary that he may have earned during said period, and ordering that grievant be paid the sum of $50 per month promised to him by the acting Chief of Police at the time he was employed.

A petition for review of the decision of the Deputy Director was thereupon made to the Director by respondent City of Rapid City for the reason that there had been an oversight as to legal requirements in force during all of the time of Kierstead's employment and that if properly applied the

decision would be reversed. The Director of the Division of Labor and Management Relations reviewed the record and affirmed the decision of the Deputy Director.

Thereafter notice of appeal and notice of petition for review was filed in circuit court by the city. The petition for review requested a review of the decision of the Deputy Director for the reasons that the decision was not supported by the law for municipal corporations nor was it consistent with the rules and regulations of the city in vogue at the time of the alleged incident.

The appeal was held before the Seventh Judicial Circuit Court with that court reversing and setting aside the order of the Division of Labor and Management Relations for the reasons: (1) that the decision of the Director was unsupported by substantial evidence; (2) that the decision was based upon actions of the grievant who did not follow established and lawful procedure in taking leave of absence without first securing permission and that therefore his discharge was justified, and (3) that the decision was based upon actions of the grievant which did not conform to established and lawful procedures with respect to prosecution of grievances and therefore the Division of Labor and Management Relations had no jurisdiction to hear and determine the matter. Appeal by grievant was thereupon made to this court from the order of the circuit court reversing the decision of the Director.

A summary of the factual background as well as the applicable statutory law is necessary for an understanding of this matter.

Rapid City is a municipality governed by a mayor and common council and has no civil service system. Grievant was hired as a patrolman for the City of Rapid City in September 1973, and continued in his employment as a patrolman until he was suspended by the Chief on July 1, 1974. The mayor of Rapid City in a letter of August 20, 1974, to the grievant affirmed the action taken by the department on July 1, 1974, for the reason that the application of grievant for leave of absence without pay did not conform to Article XIV of the Personnel

Manual of the city. Article XIV provided, among other things, that "[a] leave of absence may be granted upon application by the employee and approval by his immediate supervisor and the Mayor, or his designee * * *." The application was signed by the grievant and recommendation of the request was signed by grievant's immediate supervisor. The application was never signed by the mayor or his designee.

Grievant's basic argument with regard to the firing is that he was fired not for taking the leave of absence without prior approval of the proper authority but because he had dated and married a police woman on the force and the Chief frowned upon fraternization within the department between male and female employees. Grievant argues additionally that he had submitted his application for leave without pay to his immediate supervisor and had been advised by his supervisor that such leaves once recommended by the supervisor were considered granted if no disapproval was forthcoming and that as there was no disapproval, in accordance with accepted procedures, he took his leave.

Grievant's basic argument with regard to the $50 back pay because of his prior law enforcement experience is that when originally hired he was promised the additional $50 per month; that the police department had an unwritten policy that a starting policeman with substantial prior law enforcement experience would start at $50 per month higher than a "rookie" policeman; that other policemen with prior law enforcement experience received the extra $50 and that he was entitled to the increased rate; that when he found that he was not receiving the additional $50 he made his grievance through the proper chain of command, but that through no fault of his own his request never reached the proper party for a determination and was never acted upon by anyone with decision-making authority.

The Deputy Director concluded as a matter of law that the Division of Labor and Management Relations had jurisdiction over the matter by virtue of SDCL 3–18–1.1 and 3–18–15.2, and his findings of fact favored the grievant on all the factual issues raised.

■ The determination issue to be initially decided is whether the Director of Labor and Management Relations had the legal authority under existing law to order reinstatement and awarding of back pay.

If the Director had such authority it would have to come from the provisions of SDCL 3–18. The pertinent sections of Chapter 3–18 are:

SDCL 3–18–1.1. " 'Grievance' defined. —The word 'grievance' as used in this chapter shall mean a complaint by a public employee or group of public employees based upon an alleged violation, misinterpretation, or inequitable application of any existing agreements, contracts, ordinances, policies, rules or regulations of the government of the state of South Dakota or the government of any one or more of the political subdivisions thereof, or of the public schools, or any authority, commission, or board, or any other branch of the public service, as they apply to the conditions of employment. Negotiations for, or a disagreement over, a nonexisting agreement, contract, ordinance, policy, rule, or regulation is not a 'grievance' and is not subject to this section."

SDCL 3–18–15.2. "If, after following the grievance procedure enacted by the governing body, the grievance remains unresolved, it may be appealed to the department of manpower affairs, which shall conduct an investigation and hearing and shall issue an order covering the points raised, which order shall be binding on the employees and the governmental agency."

Grievant argues that SDCL 3–18–15.2 by implication provides ample authority for the Director to make his order of reinstatement and back pay, otherwise the Division would have hearing officers conducting hearings around the state concerning discharges and not have any jurisdiction to render decisions relating thereto.

Respondent argues that nowhere in SDCL 3–18 is there any grant of authority with respect to the ability of the Director to order reinstatement or award back pay, and that without such authority he had no jurisdiction to hear and determine the grievances presented. The nearest approach is SDCL 3–18–15.2, which provides for a hearing and the issuance of an order covering the points raised, which order shall be binding on the employees and the governmental agency.

To have the authority claimed by the grievant and assumed by the Director would require that the Director has the authority to:

(1) Repeal the force of SDCL 9–14–13:

"In an aldermanic-governed city the mayor shall have power except as otherwise provided to remove from office any officer appointed by him, whenever he shall be of the opinion that the interests of the city demand such removal, but he shall report the reasons for his removal to the council at its next regular meeting."

(2) Repeal the force of SDCL 9–23–1:

"Before any claim against any municipality for any property or services for which it is liable shall be allowed, the person asserting the same, either by himself or agent, shall reduce the claim to writing and shall verify the same to the effect that such claim is just and true; that the money therein charged was actually paid for the purposes therein stated; that the property therein charged for was actually delivered or used for the purposes therein stated and was of the value therein charged; that the services charged for were actually rendered and of the value as charged; or, in case such services were official for which fees are prescribed by law, that the fees or amounts charged therefor are such as are allowed by law; and that no part of such claim has been paid."

(3) Repeal the force of SDCL 9–24–1:

"No suit shall be instituted against any municipality to enforce the collection of a claim against it unless such claim shall first have been presented to and acted upon by the governing body in the manner prescribed by § 9–23–1. In case the governing body, having had such claim before it at a regular meeting, shall fail or neglect to act upon such claim, then the owner of such claim may bring suit to enforce the collection thereof."

(4) Repeal the force of SDCL 9–14–28:

"Except as otherwise specially provided, the governing body of every municipality shall fix and determine by ordinance the amount of salaries and compensation of all municipal officers and the times at which the same shall be paid."

The grievances raised by the grievant involve the question of removal from office of an appointed officer of the city and the question of the setting of salaries and compensation of municipal officers, both of which powers and functions are delegated by statute to the mayor and to the governing body of the municipality. SDCL 9–14–13 and 9–14–28.

We believe that under SDCL 3–18–15.2 the Director has authority to act only on grievances that do not involve the exercise of an executive or legislative power of the governmental agency or the performance of a governmental function. SDCL 9–14–13 is an executive power vesting in the mayor the power of removal of any officer appointed by him. This power is absolute. *State v. Williams*, 1894, 6 S.D. 119, 60 N.W. 410. The grievant was effectively removed from office when the mayor affirmed the action of the police department when he was suspended by the Chief.

Likewise, the setting of salaries and compensation of municipal officers by ordinance by the governing body of the municipality is a legislative function and cannot be delegated to any other body or department. *Schryver v. Schirmer*, 1969, 84 S.D. 352, 171 N.W.2d 634.

The grievant's argument requires the interpretation that SDCL 3–18 impliedly repeals all employment sections of our municipal code herein set forth, and makes the Division of Labor and Management Relations a civil service board. This is in direct

conflict with the avowed purpose of the municipal code and is inconsistent with the expressions of this court with respect to repeals by implication. *Security State Bank v. Breen,* 65 S.D. 640, 277 N.W. 497, and *State v. Christian,* 85 S.D. 92, 177 N.W.2d 271. The legislature had the power, had it so desired to exercise it, of granting to the Director in SDCL 3–18 the authority to order reinstatement and back pay. It is noted that in the National Labor Relations Act in 29 U.S.C.A., § 160(c), the authority claimed by the grievant is specifically set out and not left to implication.

Grievant's argument that the phrases "except as otherwise provided" as stated in SDCL 9–14–13 and "[e]xcept as otherwise specially provided" as stated in SDCL 9–14–28 gives to the Director the implied authority to reinstate and order back pay is not persuasive. We could find no cases in point dealing with the use of the quoted phrases and similar phraseology, but we conclude that the phrases mean exactly what they say and absent such statutory authorization the Director is without jurisdiction to order reinstatement and back pay. We find no specific statutory authorization nor any implied authority.

The decision of the circuit court is affirmed based on lack of jurisdiction of the Director of Labor and Management Relations to hear and determine the grievances presented. In view of our decision on the matter of jurisdiction, it is unnecessary for us to decide upon the other assignments of error presented.

WOLLMAN and COLER, JJ., concur specially.

DUNN, C. J., and WINANS, J., dissent.

RIES, Circuit Judge, sitting for DOYLE, J., who, prior to his death, disqualified himself from taking part in the decision in this action.

ZASTROW, J., not having been a member of the court at the time this case was orally argued, did not participate.

COLER, Justice (concurring specially).

I would affirm the order of the trial court reversing the decision of the department of labor and management relations solely on the basis of the trial court's findings on review pursuant to SDCL 1–26–36.

As stated in the order of the trial court, in the nature of a finding,

"(1) The decision of the Director of Labor and Management Relations is unsupported by substantial evidence on the whole of the record;

(2) The decision of the Director of Labor and Management Relations was based upon actions of the grievant which did not follow established and lawful procedure in taking leave of absence without first securing permission and therefore his discharge was justified;

(3) The decision of the Director of Labor and Management Relations was based upon actions of the grievant which did not conform to established and lawful procedures with respect to prosecution of grievances and therefore the Division of Labor and Management Relations has no jurisdiction to hear and determine the matter."

I am satisfied that the trial court properly applied the standard of review set forth in subdivision (5) of SDCL 1–26–36 as construed by this court in Application of Ed *Phillips & Sons Co.,* 1972, 86 S.D. 326, 195 N.W.2d 400, on the matter of appellants having taken leave without authorization. Contrary to the department's finding, the record is devoid of evidence that applications for leave without pay were not regularly submitted and necessarily formally approved by the appropriate authority as contrasted to the prevailing practice concerning taking of leave with pay, for a few days time, which was merely approved by the immediate superintending authority.

As to the authority for the commissioner to award back pay based upon a claim of oral contract, it would appear that for several months and up until the time of his discharge the appellant accepted warrants

of the city. The department's conclusion of law numbered 3, to wit: "That when the grievant found that he was not receiving the proper wage he made his grievance through the proper 'chain of command,'" is totally unsupported by the record.

I do not agree that SDCL 3–18–1.1 or 3–18–15.2 are patently offensive to § 26 of Art. III of the South Dakota Constitution or that those statutes, properly applied, are contrary to SDCL 9–14–13, 9–23–1, 9–24–1 or 9–14–28. If we are to determine these issues, it should only be done when the issues are raised in the initial stages of the proceedings, which was not done here.

The respondent city recognized the applicability of SDCL 3–18–1.1 and 3–18–15.1 to 3–18–15.4 by enacting on June 18, 1973, Article XVIII of their personnel manual entitled "Grievances" as required by SDCL 3–18–15.1. By adopting its own grievance procedure the city avoided the procedure that otherwise would be imposed upon it by the department. SDCL 3–18–15.3. Section 18.01 of the city's rules states:

"GRIEVANCES:

18.01 *Right of Employees.* Employees shall have the right to present grievances, individually, as a group, or through their designated representatives. In so doing, employees shall be assured of freedom from restrain [sic], interference, discrimination and reprisal. Such grievances shall be presently only through the established lines of authority. Section 3–18–1.2 [sic] & 3–18–15.2 SDCL as amended."

The remaining provisions of Article XVIII set forth procedures to be followed in presenting grievances, which were not complied with by appellant. The trial court properly found that the appellant herein did not exhaust his administrative remedies by adhering to the grievance procedures adopted by the city under the mandate of the law and that, therefore, the department of labor and management relations was without jurisdiction.

We need not go beyond the statutes and the personnel rules of the city to resolve this case, and I would affirm the trial court on the basis of its holding.

I am authorized to state that Justice WOLLMAN joins in this special concurrence.

DUNN, Chief Justice (dissenting).

I would reverse.

I do not believe that our legislature by enacting SDCL 3–18–15.2 intended to repeal the power of a mayor to remove officials appointed by him, SDCL 9–14–13, or to repeal the power of a municipal governing body to set salaries and compensation for its officers, SDCL 9–14–28, or to allow the Department of Manpower Affairs to "perform any municipal functions whatever," § 26, Article III, South Dakota Constitution. By Ch. 27, S.L.1970, "An Act relating to SDCL 3–18 and providing for grievance procedures and their enactment by the political subdivisions of, and the state of, South Dakota," the legislature defined "grievance" as it was to be used in SDCL 3–18 as, among other things,

"a complaint by a public employee * * based upon an alleged violation, *misinterpretation,* or *inequitable application* of any existing agreements, contracts, *ordinances, policies,* rules or regulations of * * * the government of any one or more of the political subdivisions [of the state of South Dakota] * * * as they apply to the conditions of employment. * * * " Section 1, Ch. 27, S.L.1970 (SDCL 3–18–1.1). (emphasis supplied)

SDCL 3–18–15.2, which was a part of § 1, Ch. 27, S.L.1970, read at the time this grievance arose as follows:

"If, after following the grievance procedure enacted by the governing body, the grievance remains unresolved, it may be appealed to the department of manpower affairs, which shall conduct an investigation and hearing and *shall issue an order covering the points raised,* which order shall be *binding* on the *employees* and the *governmental agency.*" (emphasis supplied)

By enacting these laws, the legislature provided a procedure through which public employees could complain for wrongful or inequitable treatment by the state or local

governments. To make governmental action terminating a grievant's employment immune from such procedure would be both unconscionable and contrary to the clear legislative intent behind these provisions. Similarly, to hold that a determination upon an oral salary agreement cannot be made by the department because municipal governing bodies are solely empowered to set salaries and compensation would be contrary to the express terms of SDCL 3–18–1.1 and 3–18–15.2.

This court has held that the legislature can

"delegate quasi-legislative power or functions to executive or administrative officers or agencies, provided it adopts understandable standards to guide its delegate in the exercise of such powers." *Boe v. Foss,* 1956, 76 S.D. 295, 313, 77 N.W.2d 1, 11.

I feel sufficient standards to guide the investigation and hearing are provided by SDCL 3–18–1.1 in that before a determination in favor of the grievant can be made and an order issued "covering the points raised" a "violation, misinterpretation, or inequitable application of any existing agreements, contracts, ordinances, policies, rules or regulations" of the governing body must be found. Furthermore, I believe the determination here by the department that the "grievant * * * was hired * * * at a starting wage of $575.00 per month" and that "the written personnel policy * * * was either ignored or misinterpretated (sic)" was supported by substantial evidence. SDCL 1–26–36(5); *Valley State Bank of Canton v. Farmers State Bank of Canton,* 1973, 87 S.D. 614, 213 N.W.2d 459; *McKinnon v. State Banking Comm.,* 1960, 78 S.D. 407, 103 N.W.2d 179.

I am authorized to state that Justice WINANS joins in this dissent.