#26683, #26746-aff in pt, rev & rem-SLZ

**2014 S.D. 60**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ERIC D. KOLDA,                                    Plaintiff and Appellant,

    v.

CITY OF YANKTON, a municipal
corporation and the YANKTON
POLICE DEPARTMENT,                               Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
YANKTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE STEVEN R. JENSEN
Judge

* * * *

TIMOTHY R. WHALEN
Lake Andes, South Dakota                         Attorney for plaintiff
                                                 and appellant.


LISA HANSEN MARSO
JASON R. SUTTON of
Boyce, Greenfield, Pashby & Welk, LLP
Sioux Falls, South Dakota                        Attorneys for defendants
                                                 and appellees.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 28, 2014

OPINION FILED **08/06/14**

#26683, #26746

ZINTER, Justice

[¶1.]		The City of Yankton (the City) terminated Eric Kolda, a police officer, for violating police department policies.  Kolda was notified of his termination by letter.  Kolda appealed to the city manager.  Following an evidentiary hearing, the city manager found cause for the disciplinary action and upheld the termination.  Kolda then sued in circuit court, claiming wrongful discharge.  On separate motions for summary judgment, the circuit court ruled that Kolda could only be terminated for cause with notice and the City failed to provide pre-termination notice.  A jury found cause for the termination, precluding Kolda's claim for damages arising after the notice and evidentiary hearing.  However, the circuit court awarded Kolda procedural due process damages for lost wages that accrued between the time of his summary termination and the post-termination evidentiary hearing.  Kolda appeals the jury verdict finding just cause for the termination; and the City—by notice of review—appeals the judgment awarding procedural due process damages.  We reverse and remand for the circuit court to vacate the award of damages because Kolda failed to exhaust his administrative remedies.

*Facts and Procedural History*

[¶2.]		In 1998, Eric Kolda was hired as a jailer by the City, a city-manager form of government.  In 1999, he was promoted to a police officer position.  Kolda's position was the lowest level in the chain of command at the Yankton Police Department.

[¶3.]		In 2004, Kolda was suspended for twenty-eight days for violating several police department policies.  On January 15, 2009, he was terminated for a

-1-

new violation of department policies. Kolda's 2009 termination is the subject of this appeal.

[¶4.] The termination occurred as a result of events that started in the spring of 2007. At that time, when both were off duty, a fellow officer told Kolda that the fellow officer had stolen a chainsaw. Department policy required Kolda to report the theft. However, Kolda did not do so. Later in 2007, Kolda's fellow officer applied for a job with the Nebraska State Patrol, which required a polygraph test. The officer told Kolda that he did not get the job because he admitted stealing the chainsaw. Kolda still did not report the theft.

[¶5.] Kolda eventually reported the theft in November 2008, which triggered an investigation of Kolda's fellow officer by the Division of Criminal Investigation. In January 2009, following the investigation, four of Kolda's superiors met and recommended that Kolda be terminated for his failure to timely report the theft. It was noted during this meeting that Kolda's failure to report the theft violated many of the same policies he violated in 2004.

[¶6.] Kolda was terminated on January 15, 2009, by delivery of a termination letter. The letter was prepared and signed by the chief of police. The letter indicated that Kolda had a right to appeal his termination to the city manager, who was also the City's grievance officer. Kolda appealed, and an evidentiary hearing was held on January 29, 2009. At the conclusion of the hearing, the city manager upheld Kolda's termination for cause. Kolda did not appeal to the Department of Labor and Regulation. Instead, Kolda sued in circuit court, alleging wrongful discharge.

[¶7.] The City moved for summary judgment. It argued, in part, that Kolda's claim was barred as a matter of law because he failed to exhaust his administrative remedies. The City also argued that SDCL 9-10-9 and SDCL 9-10-13 granted the city manager absolute power to remove Kolda, making him an at-will employee subject to termination without notice and opportunity to be heard. Circuit Judge Glen W. Eng denied the motion.

[¶8.] Judge Eng ruled that Kolda was not an at-will employee. Judge Eng first ruled that Kolda was not subject to the unrestricted removal power of the city manager because Kolda was not employed in the "administrative service of the municipality[.]" *See* SDCL 9-10-13 (granting the city manager the "power to appoint and remove all officers and employees in the administrative service of the municipality"). Judge Eng then ruled that Kolda was not an at-will employee because the City had adopted an employee handbook that only allowed termination for cause. *See Hollander v. Douglas Cnty.*, 2000 S.D. 159, ¶ 14, 620 N.W.2d 181, 185 (describing the narrow exception to South Dakota's general at-will status for employees "when an employer's discharge policy provides that termination will occur only for cause"). Because Kolda could only be terminated for cause, Judge Eng concluded that Kolda "had a property interest sufficient to trigger due process protections." *See id.* ¶ 16 ("Because [the employee] could only be terminated for cause, he had a property interest sufficient to trigger due process protections."). Judge Eng finally concluded that Kolda's procedural due process rights were violated when the City failed to provide pre-termination notice and an opportunity to be heard. *See id.* ¶ 17 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S.

532, 542, 105 S. Ct. 1487, 1493, 84 L. Ed. 2d 494 (1985)) ("[W]e must ask whether [the employee] had notice and an opportunity to be heard, 'before he was deprived of any significant property interest.'"). Judge Eng did not address the City's other arguments because he concluded that "[t]he remaining issues, even if ruled upon in the City's favor, would not entitle the City to judgment as a matter of law in light of the court's finding of a due process violation."

[¶9.] Following additional motions, Kolda moved for summary judgment. The circuit court, Circuit Judge Steven R. Jensen then presiding, granted Kolda's motion in part. Like Judge Eng, Judge Jensen ruled that Kolda was not an at-will employee, and therefore, he had a protected property interest in his continued employment that triggered procedural due process protection. Judge Jensen further ruled that the City failed to provide pre-termination due process when it summarily terminated Kolda's employment by the January 15 letter. However, Judge Jensen ruled that the January 29 evidentiary hearing provided Kolda with due process. Therefore, Judge Jensen ruled that, as a matter of law, Kolda was only entitled to claim procedural due process damages that accrued between his January 15 termination and his January 29 hearing. Judge Jensen ruled that Kolda's claim to post-January 29 damages depended on whether there was cause for the termination, and that was a question of fact for a jury.

[¶10.] A jury trial was held to determine whether cause existed to terminate Kolda. During and after trial, the City moved for a judgment as a matter of law. The City again argued that Kolda's claim was barred because he was an at-will employee who was subject to termination without notice and cause and he failed to

exhaust his administrative remedies. The circuit court denied the City's motions. The jury found that cause existed to terminate Kolda's employment, and his wrongful discharge claim was denied. However, the circuit court ruled that Kolda was entitled to procedural due process damages that accrued between his January 15 summary termination and his January 29 post-termination hearing. The court awarded $2,097.93 for wages lost during that period, plus prejudgment interest.

*Decision*

[¶11.] Because the City's motions for judgment as a matter of law are dispositive of all claims, we address the City's notice of review appealing the circuit court's denial of those motions.[1] The City first contends that Kolda was barred from recovering any damages because SDCL 9-10-9 granted the city manager absolute power to remove police officers, making Kolda an at-will employee. The City points out that at-will employees generally have no protected property interest in continued employment and therefore no right to due process protections. *See Hollander*, 2000 S.D. 159, ¶ 12, 620 N.W.2d at 185 (citing *Loudermill*, 470 U.S. at 538, 105 S. Ct. at 1491) (explaining that whether due process must be given "depends in large part on the presence of a property right in continued employment").

[¶12.] "[I]t is within the exclusive province of the [L]egislature to determine terms under which employment may be terminated." *Finck v. City of Tea*, 443

---

1. "This Court reviews both a motion for judgment as a matter of law and a renewed motion for judgment as a matter of law for an abuse of discretion." *Bertelsen v. Allstate Ins. Co.*, 2013 S.D. 44, ¶ 16, 833 N.W.2d 545, 554 (citations omitted).

N.W.2d 632, 634 (S.D. 1989). By enacting SDCL 60-4-4, the Legislature "has created 'employment at will' in this state."[2] *Finck*, 443 N.W.2d at 634 (citations omitted). *Finck v. City of Tea* recognized that the Legislature had not departed from SDCL 60-4-4's at-will status for appointed officers in aldermanic-governed municipalities. *See id.* at 635. We explained that SDCL 9-14-13 gave "the mayor 'full and absolute power to remove appointed officers[,]'" and, in aldermanic-governed municipalities, the Legislature had not limited that power.[3] *Id.* at 634-35 (citations omitted). However, *Finck* did not address the effect of a municipality's personnel policy manual on a mayor's statutory removal power. We addressed that issue in *Patterson v. Linn*, 2001 S.D. 135, 636 N.W.2d 467.

[¶13.] *Patterson* rejected an appointed officer's claim that a municipality's personnel policy—which outlined legal procedures that had to be followed before discharging employees—limited the mayor's statutory removal power. *See id.* ¶¶ 8, 11. We explained that "[c]ity policies, like city ordinances, must stay within 'reasonably strict' adherence to their statutory ambit." *Id.* ¶ 9 (quoting *City of*

---

2.  SDCL 60-4-4 provides: "An employment having no specified term may be terminated at the will of either party on notice to the other, unless otherwise provided by statute."

3.  SDCL 9-14-13, when *Finck* was decided, provided:

    > In an aldermanic-governed city the mayor shall have power except as otherwise provided to remove from office any officer appointed by him, whenever he shall be of the opinion that the interests of the city demand such removal, but he shall report the reasons for his removal to the council at its next regular meeting.

    *See Finck*, 443 N.W.2d at 634.

*Marion v. Schoenwald*, 2001 S.D. 95, ¶ 6, 631 N.W.2d 213, 216). We concluded that the municipality's personnel policy did not adhere to the statutory removal power in SDCL 9-14-13. Consequently, to allow the policy to govern would impermissibly "lead[] to the inconsistent result that a city [could] override the [removal] powers conferred upon it by the Legislature." *Id.* ¶ 11.

[¶14.] The City argues that under the principles of *Finck* and *Patterson*, the policies in the City's employee handbook could not eliminate Kolda's at-will employment status recognized in SDCL 60-4-4. The City acknowledges that unlike *Finck* and *Patterson,* it is a city-manager form of government rather than an aldermanic form of government. But the City contends that like the mayors in *Finck* and *Patterson*, the city manager in this case had the similar absolute power to remove Kolda under a similar statute (SDCL 9-10-9), making Kolda an at-will employee. The City, however, misconstrues SDCL 9-10-9.

[¶15.] "[S]tatutes must be construed according to their intent, [and] the intent must be determined from the statute as a whole, as well as enactments relating to the same subject." *Trumm v. Cleaver*, 2013 S.D. 85, ¶ 10, 841 N.W.2d 22, 25 (second alteration in original) (quoting *In re Estate of Hamilton*, 2012 S.D. 34, ¶ 7, 814 N.W.2d 141, 143). In this case, unlike *Finck* and *Patterson*, two different statutes—SDCL 9-10-9 and SDCL 9-10-13—regulate a city manager's removal power. We construe these statutes together.

[¶16.] SDCL 9-10-9 allocates the appointment and removal powers in city-manager municipalities among the governing body, certain municipal officeholders, and the city manager. The statute provides:

> The auditor, attorney, library board of trustees, and the treasurer shall be appointed by the governing body and may be removed at any time by such governing body.
>
> The auditor and the treasurer shall each appoint all deputies and employees in his office.
>
> All other officers and employees, including all members of boards and commissions, except as otherwise provided by law, shall be appointed by the manager and may be removed by him.

The City contends that the Legislature granted the city manager absolute removal power through the language of the third sentence. That sentence grants city managers the power to appoint and remove "[a]ll . . . officers and employees" not removable by the other appointing authorities. *See id.* However, this appointment and removal power is not absolute. It is limited when "otherwise provided by law[.]" *See id.*

[¶17.]     SDCL 9-10-13 is another provision of law, adopted as a part of the same act,[4] otherwise governing the city manager's appointment and removal powers. That statute specifically limits the city manager's appointment and removal power to the "officers and employees in the administrative service of the municipality[.]" SDCL 9-10-13 provides:

> The manager shall be responsible to the governing body for the proper administration of all affairs of the first or second class municipality placed in his charge. To that end, except as otherwise provided by law, *he shall have power to appoint and remove all officers and employees in the administrative service of the municipality* and may authorize the head of any department or office responsible to him to appoint and remove subordinates in such department or office. Appointments made by or under the authority of the manager shall be made without definite

---

4.     *See* 1935 S.D. Sess. Laws ch. 158, §§ 3, 7.

> term on the basis of executive and administrative ability and of the training and experience of such appointees in the work which they are to perform.

(Emphasis added.) Therefore, SDCL 9-10-13 limits the scope of the city manager's appointment and removal powers granted in SDCL 9-10-9.

[¶18.] This interpretation is supported by two long-standing principles of statutory construction. First, SDCL 9-10-9 is the more general statute that allocates appointment and removal powers among entities, whereas SDCL 9-10-13 is a more specific statute that places a limitation on the scope of those powers. "'[S]tatutes of specific application take precedence over statutes of general application.'" *In re Estate of Hamilton*, 2012 S.D. 34, ¶ 12, 814 N.W.2d at 144 (alteration in original) (quoting *Schafer v. Deuel Cnty. Bd. of Comm'rs*, 2006 S.D. 106, ¶ 10, 725 N.W.2d 241, 245). Additionally, if the Legislature intended the language in SDCL 9-10-9 to exclusively define the scope of a city manager's appointment and removal powers, then the limiting language of SDCL 9-10-13 would be superfluous, rendering it ineffective. However, a statute must "be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" *Wheeler v. Farmers Mut. Ins. Co. of Neb.*, 2012 S.D. 83, ¶ 21, 824 N.W.2d 102, 109 (quoting 2A Norman J. Singer, *Sutherland Statutory Construction* § 46.06, 181-92 (6th ed. 2000)). Accordingly, we conclude that notwithstanding the broad appointment and removal powers allocated to city managers in SDCL 9-10-9, the language in SDCL 9-10-13 limits the scope of those powers.

[¶19.] SDCL 9-10-13 limits a city manager's removal power to the "officers and employees in the *administrative* service of the municipality[.]" (Emphasis

added.)  Therefore, as Judge Eng noted, the question is whether Kolda was employed in the administrative service of the City.

[¶20.]     An administrative position manages the affairs of a department or office.  *Cf.* Black's Law Dictionary (9th ed. 2009) (defining "administration" in relevant part as "[t]he management or performance of the executive duties of a government, institution, or business" and "[i]n public law, the practical management and direction of the executive department and its agencies"); The American Heritage College Dictionary 17 (3d ed. 1997) (defining "administration" in relevant part as "[t]hose who manage an institution"); Webster's Third New International Dictionary 28 (1976) (defining "administration" in relevant part as the "performance of executive duties: Management, direction, superintendence").

[¶21.]     In this case, Kolda was not responsible for managing the affairs of the police department.  He was a police officer, a position at the lowest level of the chain of command.  Because Kolda's job was not an administrative position, the city manager's removal power under SDCL 9-10-13 did not apply.  And because the city manager did not have legislatively granted removal power, the policies of the City's employee handbook were not negated under the principles applied in *Patterson*.

[¶22.]     The City's employee handbook explicitly provided that Kolda could only be terminated with notice and for "just cause[.]"  Therefore, the narrow exception to at-will employment applied.  *See Hollander*, 2000 S.D. 159, ¶ 14, 620 N.W.2d at 185 (citation omitted) (explaining that this Court has recognized a narrow exception to the general at-will status of employees under SDCL 60-4-4

"when an employer's discharge policy provides that termination will occur only for cause").

[¶23.]    In sum, Kolda was not an at-will employee. The terms of his employment included the terms of the employee handbook, which required that termination be preceded by notice and implemented for just cause. We affirm the circuit court's denial of the City's motions for judgment as a matter of law on the issue of Kolda's employment status.

[¶24.]    The City, however, also argues that the circuit court erred in denying its motions for a judgment of matter of law because Kolda failed to exhaust his administrative remedies. The City points out that it adopted a grievance procedure in the employee handbook, and Kolda used that procedure to appeal his termination to the city manager. But the City also points out that Kolda did not appeal the city manager's decision to the Department of Labor and Regulation before suing in circuit court. Therefore, the City contends that Kolda's claim is barred because he failed to appeal to the Department and exhaust his administrative remedy before suing.

[¶25.]    At the time of Kolda's termination, SDCL 3-18-15.1 required municipalities to establish "a procedure which its employees may follow for the prompt informal dispositions of their grievances."[5]  "If, after following the grievance

---

5.    In 2013, the Legislature enacted SDCL 3-18-15.5, which excluded "employees of public subdivisions" from the provisions of SDCL 3-18-15.1 "unless those employees [were] members of a public employee union or the governing body of a political subdivision [had] adopted an ordinance or resolution establishing a grievance procedure for all employees of the political subdivision." See 2013 S.D. Sess. Laws ch 23, § 1.  Because Kolda initiated
(continued . . .)

procedure enacted by the governing body, the grievance remain[ed] unresolved . . . it [could] be appealed to the Department of Labor and Regulation[.]" SDCL 3-18-15.2. After a final decision of the Department, an employee could appeal to the circuit court. *See* SDCL 1-26-30.2 ("An appeal shall be allowed in the circuit court to any party in a contested case from a final decision, ruling, or action of an agency.").

[¶26.]     In this case, the City handbook upon which Kolda relies for this lawsuit included a grievance procedure. The grievance procedure provided "the opportunity for all municipal employees to discuss grievances concerning the application and interpretation of the provisions of [the City's] personnel manual." City of Yankton Uniform Personnel Rules and Regulations Manual 79. It further required that the procedure "must be followed when an employee has a grievance." *Id.* The final step of the grievance procedure provided that "[t]he City Manager, after [a] hearing, shall render a decision on the employee's grievance. Decisions of the City Manager shall be final and subject to appeal only as provided by State or Federal law." *Id.* (emphasis added).

[¶27.]     Kolda concedes that he did not appeal to the Department of Labor and Regulation as provided in SDCL chapter 3-18. However, Kolda argues that he was excused from using the administrative process because he contends that chapter 3-18 applies only to public unions, not to all public employees. Kolda overlooks the definition of "public employee."

_____

(. . . continued)
    his action before this enactment, the new provision does not apply in this
    case.

[¶28.] SDCL 3-18-1 defines a "public employee" as "any person holding a position by appointment or employment in the government of the State of South Dakota or in the government of any one or more of the political subdivisions thereof . . . or any other branch of the public service." Kolda was a public employee within the meaning of chapter 3-18. Unionization of City employees was irrelevant to the application of the grievance procedure.

[¶29.] Kolda also contends that he was pursuing an "appeal" before the city manager rather than a grievance. Again, Kolda overlooks definitions in chapter 3-18. SDCL 3-18-1.1 defines "grievance" to include any alleged violation of any agreement, contract, or policy of the City.[6] Kolda's "appeal" before the city manager was grounded on the allegation that numerous City policies had been violated.[7]

---

6. A "grievance" is defined, in relevant part, as:

> a complaint by a public employee . . . based upon an alleged violation, misinterpretation, or inequitable application of any existing *agreements*, *contracts*, ordinances, *policies*, or rules of the government of the State of South Dakota or the government of any one or more of the political subdivisions thereof . . . as they apply to the conditions of employment.

SDCL 3-18-1.1 (emphasis added).

7. In his complaint, Kolda alleged numerous violations of the City's personnel policies, specifically that: the City "failed to follow the procedures [set forth in the City's employee handbook] for disciplining or terminating an employee"; the City "disciplined and terminated [Kolda] . . . without cause and in violation of its personnel policies"; "the personnel policies are clearly designed to afford every employee . . . procedural . . . due process before they were to be disciplined or their employment terminated"; the City "did not apply the policies and procedures . . . in the same fashion as they had with other employees and thereby violated the terms and conditions of their personnel policies[.]"

These allegations fit the statutory definition of a grievance.[8]

[¶30.] In this case, Kolda used the City's grievance procedure to appeal his termination to the city manager. Yet he failed to follow the next step of the procedure and appeal the city manager's decision to the Department of Labor and Regulation. Therefore, Kolda failed to exhaust his administrative remedies, and the circuit court lacked jurisdiction to resolve Kolda's claims. *See Reynolds v. Douglas Sch. Dist.*, 2004 S.D. 129, ¶ 10, 690 N.W.2d 655, 657 (quoting *Small v. State*, 2003 S.D. 29, ¶ 16, 659 N.W.2d 15, 18-19 (per curiam)) ("It is a settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened

---

8. Kolda contends that reinstatement issues could not be resolved by the Department of Labor and Regulation because, under *Kierstead v. City of Rapid City*, 248 N.W.2d 363 (S.D. 1976), reinstatement is an executive function over which the Department does not have jurisdiction. We disagree.

   In *Kierstead*, the lead opinion stated "that under SDCL 3-18-15.2 the Director has authority to act only on grievances that do not involve the exercise of an executive or legislative power of the governmental agency or the performance of a governmental function." *See id.* at 366. It then stated that a mayor's absolute power to remove certain employees under SDCL 9-14-13 was an executive power. *See id.* The lead opinion concluded that the administrative agency did not have jurisdiction to act on a claim concerning the exercise of the mayor's absolute removal power. *See id.* at 367.

   We first note that only one member of the Court adopted the foregoing conclusion. *See id.* at 368. We also note that even if the lead opinion had been the holding of the Court, that opinion is not applicable in this case. The lead opinion involved the jurisdiction of the Department of Labor to consider a claim involving a mayor's absolute removal power in an aldermanic-governed municipality. *See id.* at 366. This case involves the city-manager form of government, and as previously explained, the city manager did not have the absolute statutory power to remove Kolda. Therefore, the lead opinion's language is inapplicable in this case. *Cf. Gettysburg Sch. Dist. v. Larson*, 2001 S.D. 91, ¶ 17, 631 N.W.2d 196, 202 ("Under SDCL 3-18-15.2, the [D]epartment [of Labor] has authority to order reinstatement as of the date [a teacher] was improperly released. That authority does not infringe on school board autonomy; it requires a board to follow the procedures it contractually adopted.").

injury until the prescribed administrative remedy has been exhausted. Failure to exhaust is a jurisdictional defect."); *cf. Schloe v. Lead-Deadwood Indep. Sch. Dist.*, 282 N.W.2d 610, 613 n.1, 614 (S.D. 1979) (explaining that the Department of Labor's "jurisdictional base is lost if appellant's grievance is not timely filed in accordance with the grievance procedure"; and noting that "the trial court could have no better jurisdiction than that of the [Department]"); *Krentz v. Robertson*, 228 F.3d 897, 904 (8th Cir. 2000) (citations omitted) ("[A]n employee waives a procedural due process claim by refusing to participate in post-termination administrative or grievance procedures made available by the state.").

[¶31.]	We reverse the circuit court's denial of the City's motions for judgment as a matter of law on the issue of exhaustion of administrative remedies. This matter is remanded to the circuit court to vacate the award of pre-hearing due process damages. Because Kolda's failure to exhaust his administrative remedies is dispositive, we do not address the other issues raised on appeal.

[¶32.]	GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.