PETERSON, Appellant, v. HOFTIEZER, Respondent.

(150 N. W. 934.)

(File No. 3653.   Opinion filed February 3, 1915.)

1. Corporations—Foreign Corporations—Engaging in "Interstate Commerce"—State Statute, Invalidity of.

A corporation of Minnesota, which, through canvassing agents, took applications in this state for service contracts to be issued by the company, pursuant to which, if accepted and approved, contracts were issued which provide for giving of. veterinary advice and prescriptions, the benefit of its purchasing department in securing merchandise from manufacturers, etc., of its stock department in the purchase of stock, and of its selling department in selling produce consigned to it, and its assistance in hiring help, etc., held, to be engaged in "interstate commerce," and therefore that, as applied to such corporations, Civ. Code, Secs. 883 and 885, concerning the carrying on of business in this state by foreign corporations, are invalid.

2. Negotiable Instruments—Defenses, Failure of Consideration, Fraud—Innocent Purchaser, Immaterial Issue.

In a suit by an indorsee of a promissory note, held, that, unless defendant shows failure of consideration, or fraud, in its inception, the issue of whether plaintiff was an innocent purchaser for value is immaterial, as affecting defendant's right to plead and prove said defenses.

3. Same—Defenses, Fraud, Failure of Consideration—Burden of Proof.

Where a maker of a promissory note, sued by an indorsee, pleads failure of consideration, and fraud, as defenses, he assumes the burden of proving that the contract, in consideration of which the note was given, was procured by fraudulent representations of such character that a man of ordinary intelligence was entitled to rely thereon.

4. Same—Defenses—Fraud, False Representations—Sufficiency of Evidence.

In a suit on a promissory note, held, that the evidence as to fraud and false representations, alleged to have induced execution of a contract in connection with which the note was given, was insufficient.

**5.   Contracts—Fraudulent Representations—Unreasonableness of Representations, Right to Rely on.**

Where, in defense to a suit upon a note executed pursuant to an existing contract, defendant, to show false representations as an inducement to execution of the contract, testified that the agent of the other party thereto, told him he could get 30 cents per bushel more for his wheat by consigning it to the agent's principal than by selling it at home, but offered no evidence to show the falsity of the statement, **held,** that, if the court could assume its falsity, it was not a statement upon which defendant, as a man of ordinary intelligence, could rely as fraudulent.

Appeal from Circuit Court, Hamlin County.   Hon. CARL G. SHERWOOD, Judge.

Action by F. H. Peterson against C. J. Hoftiezer, upon a promissory note executed in consideration of a contract between defendant and plaintiff's assignor.   From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed and remanded.

*M. J. Russell,* for Appellant.

*W. M. Skinner,* and *Hanten & Hanten,* for Respondent.

(1) Under point one of the opinion, Appellant cited: Sioux Remedy Co. v. Cope et al., (S. D.) 133 N. W. 683.

(4) Under point four of the opinion, Respondent cited: Walters v. Rock, 18 N. D. 45, 115 N. W. 511.

SMITH, J.   On April 29, 1911, defendant executed and delivered to a Minnesota corporation, the Farmers' General Service Company of Minneapolis, a promissory note for $107.50 due on or before October 1, 1911, which note was indorsed:

"Without recourse

Farmers' General Service Company.

By S. P. Lesselyoung, Pres.

$21.50, May 6th, 1911."

Plaintiff Peterson brings action on this note, alleging that he is an innocent purchaser for value before maturity.

[1] The answer puts the latter allegation in issue, and as an affirmative defense alleges failure of consideration and fraud in the inception of the note, and that the Farmers' General Service Company is a foreign corporation and has failed to comply with the provisions of sections 883 and 885 of the Civil Code. There was a jury trial and a verdict for defendant.   Plaintiff ap-

peals from the judgment and the order overruling motion for a
new trial. At the trial plaintiff produced and offered the note
in evidence. The undisputed evidence shows that it was indorsed
in the form above set forth prior to the beginning of the action.
Whether it was delivered to plaintiff for value before maturity,
and whether plaintiff was an innocent purchaser, were issues pre-
sented to the jury at the trial and decided adversely to plaintiff.
The sufficiency of the evidence to sustain the verdict is one of
the questions presented on this appeal. It is admitted upon the
record that the Farmers's General Service Company was foreign
to this state, and had not complied with the statutes relating to
foreign corporations. It is respondent's contention that the Far-
mers' General Service Company, at the time this transaction was
had and the note in suit executed and delivered, was engaged in
the transaction of business within this state, in violation of sec-
tion · ·3 of the Civil Code, and that, its transaction of business
in this state being unlawful, the note was without consideration.
If the transaction between the Farmers' General Service Com-
pany and the defendant constituted intrastate business, its failure
to comply with the statutes of this state rendered its acts unlawful
and precluded it or its assignee- from maintaining an action in the
courts of this state. On the other hand, if the Farmers' General
Service Company, in the transaction of its business through its
contract with defendant, was engaged in interstate commerce, the
statutes of this state are controlled by the Interstate Commerce
Act, and such defense would not be available as against the cor-
poration. The corporation itself not being plaintiff in the action,
section 885, Civil Code, is not applicable. Citizens' Bank v.
Corkings, 9 S. D. 614, 70 N. W. 1059, 62 Am. St. Rep. 891;
Dewey. v. Komar, 21 S. D. 117, 110 N. W. 90. The Farmers'
General Service Company in the transaction of its business em-
ployed canvassing agents in this and other Northwestern States,
who took applications for service contracts to be issued by the
company, and who were authorized to receive money or notes
from applicants to be forwarded to the company, and, if the ap-
plications were accepted and approved, contracts were issued in
accordance with the application. The evidence shows that at
least a dozen of these applications were taken by the canvassing
agent in the vicinity of defendant's residence in this state, and

contracts issued thereon. Briefly stated, the application and contract provide that the holder of the contract shall be entitled to receive advice through the company' veterinary department, and to receive prescriptions found necessary by the veterinary staff; to receive the benefit of its purchasing department in securing merchandise from manufacturers, brokers, and wholesale jobbers, eliminating middlemen and dealers; to receive the benefit of its stock department in the purchase of stock for feeders, breeders, etc.; that the company shall act as commission and sales agent for farm produce consigned to it; shall assist in hiring help required by the contract holder, when requested by letter or personal visit; shall furnish all information, upon request relating to scientific farming, horticulture, etc., from the company's staff of assistants and correspondents; and provides that the contract holder may purchase remedies from the company for himself, and for others not contract holders, and may use such remedies for treatment of ailments of stock other than his own. It seems entirely clear that, under these facts, the company was engaged in transacting business in this state within the meaning of our statute. It seems equally clear that under the views of this court in Sioux Remedy Co. v. Cope, 28 S. D. 397, 133 N. W. 683, and of the Supreme Court of the United States in International Text-Book Co. v. Pigg, 217 U. S. 91, 30 Sup. Ct. 481, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103, the parties to this contract were engaged in interstate commerce, and that as applied to such corporation sections 883 and 885 of the Civil Code are invalid. The Pigg Case overrules many decisions of state courts upon identical or similar facts. See note 18 Ann. Cas. 1109. This defense must therefore fail.

[2] At the trial, plaintiff produced and offered the note in evidence. The answer admits its execution. The evidence tends to show that it was indorsed prior to the beginning of the action. Whether plaintiff was an innocent holder and purchaser for value before maturity is material only so far as it affects defendant's right to plead and prove failure of consideration and fraud. The issue is immaterial, unless defendant has shown failure of consideration or fraud in the inception of the note.

Appellant assigns as error insufficiency of the evidence to sustain the verdict upon this issue. The evidence in the record

shows that the Farmers' General Service Company is a Minnesota corporation, having its offices at the city of Minneapolis, and is engaged in the business of selling, in various Western States, to farmers, stockmen, livery keepers, and others, contracts entitling the purchasers to receive advice through the company's veterinary department; to receive the benefit of the company's purchasing department, in the purchase of live stock and merchandise; the benefit of the company's employment service, in securing laborers; the benefit of information on scientific farming and horticulture—all in the manner and under the conditions provided in the contract.

[3, 4] The defendant was a purchaser of one of these contracts, in consideration of which the note in suit was given. The service corporation employed one Lesselyoung as its traveling salesman to solicit applications for these contracts, which cover a period of five years from the date thereof. The application specifies, in a general way, the kind and mode of service to be rendered under the proposed contract, and provides that the contract, with certain premiums, will be sent to the applicant on 60 days' free trial, and, if satisfactory, the applicant agrees to pay the Farmers' General Service Company at the rate of $21.50 a year, for five years, aggregating $107.50. Defendant's application was taken by Lesselyoung and was accepted by the General Service Company, and a contract executed and delivered to him, the latter part of April, 1911. The contract itself is in strict conformity to, and embodies, every specification contained in the application, which is made a part of the contract. The application signed by defendant covers something over four printed pages of brief, and the contract itself covers about five printed pages. The answer alleges that the agent of the service company, through whom the defendant made the application and purchased the contract, represented to the defendant that the defendant would receive service and information from the company through the company's veterinary department, purchasing department, stock department, general information department, employment service department, and scientific farming and horticulture department, and alleges that at no time since the date thereof has the service company been able, ready, and willing to comply with the provisions of the service contract; that the representation that the

service company could and would render such services to defendant were not true, and that the agent of the company did not believe them to be true, and that the contract was entered into without any intention on the part of the service company to render such services; that said representations and promises were made to deceive the defendant; that defendant relied thereon, and would not have signed said application or note except for the representations so falsely and fraudulently made; that the service company has failed to render service and give information required by said contract, upon defendant's request therefor, and is in no position or condition to render the same, by reason of which said note was and became wholly fraudulent and void in its inception. Defendant, under the allegations of fraud and failure of consideration in his answer, assumed the burden of proving that the contract was procured by false and fraudulent statements and representations, of such character that defendant, as a man of ordinary business intelligence, would be entitled to rely thereon·

The evidence in the record covers some 60 printed pages, and an attempt at recapitulation thereof would unduly extend this opinion to no useful purpose. Suffice it to say that defendant, with the single exception hereinafter referred to, has not offered any evidence tending to show that the statements or representations which are alleged to have induced him to sign the application were in fact false, or that the service company, when it accepted the application and made the contract, was not able to or did not intend to perform the obligations assumed by it under the contract. On the contrary, the evidence tends strongly to show that the company was acting in good faith toward its contract holders, and possessed the means and ability to perform the obligations it assumed. Whether defendant acted with good business judgment in purchasing such a contract, or whether the benefits under it would be as great as he anticipated, is not the question before us in this case. Courts cannot relieve men against mistakes of judgment in the conduct of their business affairs. Relief can be given only when fraud and deceit are elements in such transactions.

[5] The defendant testified to representations made by Lesselyoung, as inducements to him to sign the application for the service contract. An examination of the contract shows that the

company did in fact obligate itself to perform services in conformity with the oral representations and written application. Defendant' own testimony also shows that he never, at any time, made any request for services under said contract, except that he shipped a single can of cream to the company for sale, for which he had to pay express charges, and the shipment did not net him any more than would the home market. He testified that Lesselyoung told him he could sell wool for 30 cents a pound, and that he sold wool for 16 cents at home; that he sent a sample to the company and could get only 16 cents. These statements are the only matters which defendant attempted to prove which might tend to show fraud in the inception of the note. He never shipped any wheat or any wool, and never made a request for services under any of the so-called departments named in the service contract, except in the two instances above noted. Defendant did testify, in effect, that Lesselyoung told him he could get 30 cents per bushel more for his wheat by consigning it to the company, but did not offer any evidence to show that the statement was false. If this court may assume it was false without proof, it certainly could not be considered a statement upon which defendant as a man of ordinary intelligence could rely as fraudulent.

In rebuttal of this testimony, plaintiff offered the testimony of farmers, neighbors of defendant and whom defendant, in company with Lesselyoung, had solicited, and who had secured contracts identical with the one in question here, to show that such contract holders had demanded and received satisfactory services from the company. No representations upon which, as a matter of law, a man of ordinary intelligence might rely, are shown to have been false by anything in the record. The verdict of the jury upon that issue is not sustained by any evidence.

The judgment and order of the trial court must be reversed, and the cause remanded for further proceedings according to law.