**William L. DICKEY**

v.

**John F. CARTER.**

Civ. A. No. 73–1700–C.

United States District Court, D. Massachusetts.

April 17, 1975.

Richard A. Savrann, Newell, Savrann & Miller, Boston, Mass., for plaintiff.

John F. Carter, pro se.

## OPINION

CAFFREY, Chief Judge.

This is a civil action brought for a cause of action alleged to arise under

the provisions of 15 U.S.C.A. § 77*l* (§ 12 (2) of the Securities Act of 1933).

Plaintiff, William Dickey, testified that he is a builder and manager of certain real estate enterprises, who first met defendant during the summer of 1971. At that time plaintiff, who holds a bachelors degree in electrical engineering and a masters degree, was employed as a school teacher in Manchester, New Hampshire. As a result of conversations with defendant, Dickey took an examination for and was licensed to sell real estate and insurance in the State of New Hampshire and in the Commonwealth of Massachusetts.

About this time, he went to work for Brokers Diversified Insurance Agency, a corporation controlled by defendant.

Approximately six to twelve months later, defendant formed a corporation called Brokers Diversified Inc. which was engaged in the business of selling stocks and bonds. This led plaintiff to take and pass an examination given by the National Association of Securities Dealers, which resulted in plaintiff becoming a licensed seller of stocks and bonds.

Plaintiff testified, and I find, that during the summer of 1972, while he was attending sales meetings conducted by both Brokers Diversified Insurance Agency and Brokers Diversified Inc., he learned about a third corporation controlled by the defendant, Brokers Diversified Services Corp. (hereinafter Services).

Plaintiff and defendant had conversations relative to Services during the summer and early fall of 1972.

At about the same time, defendant caused the formation of Brokers Diversified Realty Corporation (Realty), and arrangements were negotiated between plaintiff and defendant for plaintiff to open an office of Realty in Salem, New Hampshire, where plaintiff then resided. In the course of conversations about opening a Salem, New Hampshire office, there was some discussion as to whether defendant would "pick up" some of the expenses incurred as a result of opening this office.

Plaintiff contends that defendant had agreed to reimburse him for these expenses. Defendant denied making any such promise. Both agree that no reimbursement was ever made for the expenses, which plaintiff alleges ran to about $25,000.

I find that in the course of many conversations in the late summer through early autumn 1972, defendant represented to plaintiff that Services planned to employ a heretofore unused technique for mass marketing fire and automobile insurance. He further represented that by approaching employees of those corporations with large numbers of employees, Services would be able to write a substantial number of policies while offering a 30% discount to newly insured employees of those corporations.

I further find that defendant represented to plaintiff prior to November 1972 that the Securities and Exchange Commission had orally approved the prospectus submitted to it, and that the prospectus was then at the printer and unavailable for him to review. He also represented that the stock of Services would be sold as a public offering, and that plaintiff would be named regional manager of a New Hampshire office to be opened by Services.

I further find that defendant represented to plaintiff that the value of Services stock would increase once the corporation went public.

On November 6, an agreement was made between the parties under the terms of which plaintiff agreed to purchase from defendant 25,000 shares of Services stock at $2 per share. Prior to making this agreement, I find that plaintiff suggested to defendant that he could obtain the $50,000 to deposit to make good the check by pledging to plaintiff's bank the 25,000 shares as security for a loan plaintiff would make for that purpose.

Defendant further represented to plaintiff that plaintiff could sell off

some of the stock at a profit as soon as the corporation went public. I find that the parties agreed that upon receipt of plaintiff's check defendant would hold it until plaintiff received from defendant a stock certificate for the 25,000 shares which certificate would adequately cover the amount of that check.

I find that plaintiff never received a stock certificate from defendant for the 25,000 shares. I further find that defendant negotiated the check so promptly that it reached plaintiff's bank on November 13 and was paid on November 14, that plaintiff raised the funds to make good the check by putting up a building and a piece of land as security to his bank for the funds credited as a loan to his checking account and that this loan is still outstanding and that plaintiff is still paying interest on it.

In the negotiations to have plaintiff purchase the stock, I find that material nondisclosures by defendant occurred, namely, that Travelers Insurance Company, a large writer of automobile insurance policies in Massachusetts, had already announced its intention to mass market insurance and also that there was in existence a creditor of Services named McGee.

Approximately four months after giving his check to defendant, plaintiff got a copy of the prospectus for Services from a secretary employed by the defendant. From it plaintiff learned that the prospectus made no mention of Services establishing an office in New Hampshire; that the prospectus did not reflect the $50,000 paid by plaintiff for the stock; and the existence of shareholder McGee, who held 20,000 shares of Services and who had been promised 7% interest on his purchase price. Upon completion of his examination of the disclosures contained in the prospectus, plaintiff made a demand for recision of the purchase of stock from defendant and thereafter filed this case.

■ On the above summary of the evidence, I find that there is a clear violation of 15 U.S.C.A. 77*l* consisting of substantial misrepresentations of material fact and nondisclosures of material fact necessary to make the statements not misleading in light of the circumstances in which they were made, and that plaintiff is entitled to recision for the purchase of stock and return of his $50,000.

■ Several matters defendant complained of orally before or during trial should be noted briefly. Defendant complained that he was "denied" a jury trial, to which complaint the short answer is that there is no claim for a jury trial contained in the file in this case.

In this case, defendant was represented by a Washington, D.C. law firm and then by a Worcester, Massachusetts law firm and therefore had ample opportunity to claim a jury trial during the time period provided in the rules of civil procedure.

■ Defendant is a plaintiff in several other cases pending before other judges of this court. If it is a fact, as he claims, that a jury trial was claimed in those cases, such claims are not effective in this case.

■ Defendant has also made a number of purely hearsay claims alleging a conspiracy by the organized bar denying him representation because he brought the above-mentioned suits against the SEC and some of its employees. The short answers to that claim are first, that no credible or admissible evidence has been offered to substantiate this claim other than plaintiff's theorization about the alleged conspiracy, and secondly that the papers in this case show that the Worcester law firm withdrew for the practical reason that defendant failed to pay his bills for legal services which is certainly not evidence of a conspiracy of the type complained of.

Accordingly, I find and rule that plaintiff is entitled to judgment against defendant for $50,000 with interest and costs.