GENERAL ELECTRIC CREDIT CORPO-
RATION, a Division of the General
Electric Company, Plaintiff in # 11851,

v.

M. D. AIRCRAFT SALES, INC., Defend-
ant and Cross-Claimant in # 11851, and
Plaintiff and Respondent in # 12107.

and

Frederick G. MAHONEY, Defendant,
Cross-Claimant and Respondent
in # 11851,

v.

David PETERS, Defendant, Cross-Claim
Defendant, and Appellant in # 11851,
and Defendant and Appellant in
# 12107.

Nos. 11851, 12107.

Supreme Court of South Dakota.

Argued Jan. 9, 1978.
Decided May 18, 1978.

Gale Fisher, of May, Johnson & Burke, Sioux Falls, for respondents.

Patrick J. Kane, of Kean, Kane & Ulrich, Sioux Falls, for appellant.

HALL, Circuit Judge.

These consolidated appeals, # 11851 and # 12107, began as an action in attachment (# 11851) under SDCL 21–17 by General Electric Credit Corporation (hereafter G.E.C.C.) against M.D. Aircraft Sales (hereafter M.D.), a Pennsylvania corporation, and David Peters, an Ohio resident, the transferee of an aircraft from M.D. Frederick Mahoney, president of M.D., was stipulated and ordered as a party after commencement of the action.

In January, 1974, G.E.C.C. financed the purchase of several aircraft for M.D., including a Bellanca Super Viking, under a floor plan agreement, with G.E.C.C. taking a security interest in the inventory of M.D.

Appellant Peters, a barber, owned a Cherokee airplane but wanted to purchase a Super Viking. In March, 1974, Peters negotiated with Mahoney for a trade of the Cherokee for the Bellanca Super Viking, with a $23,000 credit for the Cherokee plus $20,500 cash. The Cherokee and cashier's checks for the balance were delivered, and Peters received the Bellanca and a bill of sale from M.D. warranting title, signed by Mahoney as president. The facts after the March, 1974, sale are in dispute but the trial court's findings show that on September 9, 1974, Mahoney and Peters entered into a written agreement for Mahoney to buy the Bellanca back from Peters, with Peters to transfer the Bellanca in exchange for 25% of the stock ownership in M.D. This agreement was drawn in longhand by a Pennsylvania attorney, who testified that he explained the agreement carefully to both parties before they signed it. Later the same agreement was typed and signed again. Throughout the legal proceedings there was a question as to whether Mahoney and M.D. concealed the original sale of the Bellanca to Peters from G.E.C.C., whose security interest was still in effect. There was a further question about what information was given by Mahoney or M.D. to Peters on which he could make his decision

to accept the M.D. stock in exchange for the Bellanca. On this issue, the trial court found that no material misrepresentations or suppressions of facts were made by either party sufficient to show fraud or deceit, and further found that there was no reliance by Peters on any representations or statements of M.D. However, the court's findings do not include the facts behind these generalizations, nor the relative bargaining positions and intelligence of the parties.

Soon after this stock transfer, G.E.C.C. foreclosed on M.D., at which time G.E.C.C. discovered that M.D. never forwarded to G.E.C.C. the proceeds from the original sale of the Bellanca to Peters. Since G.E.C.C. still maintained a security interest in the Bellanca in question, it brought the first action in attachment. In that case, the court found the terms of the agreement of September 9, 1974 valid and binding on the parties; that M.D. was indebted to G.E.C.C. in the amount of $38,667.25 plus $3,318.35 in interest (which is not appealed from); and that Mahoney was the lawful owner of the Bellanca and entitled to immediate possession.

As to Peters' defenses, the trial court concluded that there was no clear and convincing proof of fraud by M.D. Mahoney, or Peters. In appeal # 11851, the trial court did not determine the rights and obligations of Mahoney and Peters in the September 9, 1974 agreement.

The decision in the attachment action necessitated that M.D. bring a second suit against Peters, (# 12107) as a claim and delivery action. Relying on the September 9, 1974 agreement, M.D. sought immediate possession and delivery of the Bellanca. In its complaint, M.D. alleged that the stock was transferred to Peters pursuant to the agreement but that Peters wrongfully failed and refused to deliver the aircraft, and detained it from M.D. In his Answer, Peters admitted signing the agreement but denied that the stock certificates had been passed, as required by the terms of the agreement. As affirmative defenses Peters incorporated by reference all of the defens-

es in his Answer in the first case, which included the 1933 Securities Act (15 U.S. C.A. § 77*l*) and the South Dakota Securities Act (SDCL 47–31–128 to 47–31–133). The trial court upheld the validity of the September 9, 1974 agreement and held that M.D. was the owner of the airplane and entitled to possession. No findings or conclusions were made on any of Peters' defenses, or on his rights of recovery against M.D. or Mahoney for the value of the plane or value of the stock.

These appeals present three issues for consideration:

1. Did the trial court use the proper standard of proof under South Dakota law when deciding the factual issue of fraud or deceit?

2. Did the trial court use the proper elements under the 1933 Securities Act in ruling on Peters' affirmative defense of a violation of the Act by Mahoney, individually, and as president of M.D.?

3. Was Peters entitled to rescission under 15 U.S.C.A. 77*l* of the September 9, 1974 agreement, based on omissions of material facts?

## ISSUE NO. 1

As the findings and conclusions in # 11851 indicate, the trial court found no clear and convincing proof of fraud by M.D., Mahoney, or Peters. Thus, the trial court apparently used the "clear and convincing" standard of proof in judging the fraud defense.

■ We do not believe this is the proper standard to evaluate a claim of fraud. When the trial court entered its judgment, it did not have this court's latest expression on the standard of proof in fraud cases: *Aschoff v. Mobil Oil Corp.*, # 11887 and # 11894, opinion filed by this court on December 30, 1977, S.D., 261 N.W.2d 120. In *Commercial Credit Equipment Corp. v. Johnson*, 87 S.D. 411, 416, 209 N.W.2d 548, 551 (1973), we said that "[f]raud must be proved by a preponderance of the evidence, but that evidence must be clear, satisfactory and convincing." In *Aschoff*, supra, we

distinguished "a preponderance" from "clear, satisfactory and convincing," and held that the standard of proof in a case of fraud is a preponderance, without the additional requirement "clear, satisfactory and convincing". Since the trial court applied an inaccurate standard of proof to the fraud issue, that issue is reversed and remanded for findings based on the preponderance test.

## ISSUE NO. 2

Whether the trial court used the proper elements when ruling on Peters' affirmative defenses under the 1933 Securities Act relates specifically to three of the court's findings: (1) that there was no material misrepresentation of facts or suppression of facts sufficient to show fraud or deceit; (2) that there was no reliance by Peters on any representations or statements by M.D.; and (3) that there was no utilization of the instrumentalities of interstate commerce.

The 1933 Securities Act sections on which Peters relied as an affirmative defense are 15 U.S.C.A. § 77*l* and 77*q*. Section 77*q* provides in part:

"(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce *or by the use of the mails, directly or indirectly —*

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any *omission to state a material fact* necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser. . . ."
15 U.S.C.A. at 172. (emphasis added)

Section 77*l* should be read with § 77*q*:
"Any person who—

. . . . .

(2) offers or sells a security . . ., by the use of any means or instruments of transportation or communication in interstate commerce *or of the mails,* by means of a prospectus or oral communication, which includes an untrue statement of a material fact *or omits to state a material fact* necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), *and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known,* of such untruth or omission,

shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." 15 U.S.C.A. at 128. (emphasis added)

It is undisputed that the stock certificates from M.D. are "securities" under the purview of the 1933 Act.

■ The issue of the use of interstate commerce or mails in a possible violation by Mahoney or M.D. of the 1933 Securities Act became material to Peters' defenses. The record amply demonstrates use of the mails, telephones and interstate air transportation in the process of selling the Bellanca back to Mahoney for M.D. stock. In fact, Mahoney admitted mailing the stock certificates to Peters. Yet, the trial court found only that the stock certificates were issued and intended to constitute a conveyance, and that "there was no utilization of the instrumentalities of interstate commerce". The trial court made no findings or conclusions on the use of the mail, an element of the 1933 Securities Act pleaded by Peters in his Answer. A reading of § 77*l* and § 77*q* makes it clear that use of interstate commerce and the mails (whether interstate or intrastate) are separate means of violating the Act. Peters was certainly entitled to a finding on the use of the mails since this is a distinct element of the Act. (See *Moses v. Michael,* 5 Cir., 292 F.2d 614, 618 (1961), regarding the mailing of copies of securities under the Act, and *Creswell-Keith, Inc. v. Willingham,* 8 Cir., 264 F.2d 76 (1959), regarding delivery of stock certificates by mail as qualifying under the Act.)

■ ·The trial court's finding that there was no reliance by Peters on the representations of M.D. or Mahoney also indicates that the court did not properly interpret the 1933 Act. It is well-settled case law that reliance on misrepresentations or omissions need not be proved in order to prove a violation of the Act. *Hill York Corp. v. American International Franchises, Inc.,* 5 Cir., 448 F.2d 680, 695 (1971); *Johns Hopkins University v. Hutton,* 4 Cir., 422 F.2d 1124, 1129 (1970); *Gilbert v. Nixon,* 10 Cir., 429 F.2d 348, 356 (1970).

■ The trial court found that there was no material misrepresentation or suppression of facts sufficient to show fraud or deceit. This is further indication that the trial court applied the wrong elements of the Securities Act. As we read Peters' Answer, he does not plead common law fraud or deceit, nor does he seek to invoke the fraud or deceit subsection of § 77*q*. Rather, Peters relies on subsection (2) of that section regarding omissions of material fact. The statutory elements are clearly delineated so that subsection (2) can be violated by either "untrue statements of a material fact" or by "omission to state a material fact". Each element is unique, and the court's finding as to misrepresentations or suppression of facts does not specifically address the 1933 Act as pleaded by Peters.

The question of materiality also should have been addressed in the findings. A very specific definition of "material" is set forth by §§ 77*l* and 77*q*, and by the regulations adopted by the Securities and Exchange Commission to interpret the 1933 Act:

"The term 'material', when used to qualify a requirement for the furnishing of

**552**

information as to any subject, limits the information required to those matters as to which an average prudent investor ought reasonably to be informed before purchasing the security registered." 17 C.F.R. 230, 405(1) (1971). See also *Hill York Corp.*, supra, at 696, and *S.E.C. v. First American Bank & Trust Co.*, 8 Cir., 481 F.2d 673, 679 (1973).

Additionally, Peters was found to have "full access to all financial records of M.D." during the negotiations with Mahoney regarding M.D. stock. This, too, is inaccurate under the Act, for all that is required when invoking the Act as a defense is to show that there was no knowledge of any untruth or omission, not that the person could not obtain the information. *Hill York Corp.*, supra, at 696.

In summary, under the 1933 Act, if a misrepresentation is in issue it is unnecessary to show reliance on the misrepresentation, and if an omission is involved, it is unnecessary to show that the investor would have acted differently had there been no omission. *S.E.C. v. First American Bank & Trust Co.*, supra. "'Neither the monumental credulity of the victim nor the investor's sophistication or independent knowledge offer a refuge . . .' [citations omitted]," *Hill York Corp.*, supra, at 696. Thus, in view of the fact that materiality of an omission is a question of fact to be determined by the court below, we reverse and remand for a reconsideration of that issue and the issue of use of the mails.

### ISSUE NO. 3

The last issue we address is whether Peters was entitled to a rescission of the September 9, 1974, agreement due to omissions of material fact. In an opinion letter dated February 11, 1975, the trial court ruled that rescission of the agreement was merited only if Peters could meet the burden of proving common law fraud. Apparently, this ruling was based on the court's erroneous conclusions that the 1933 Act did not apply for jurisdictional reasons, and that Peters was alleging common law fraud. We have fully considered the application of

the 1933 Act to these facts in Issue # 2, and believe that the 1933 Act will apply when the appropriate findings are made.

Section 77*l* of the Act specifically sets forth the remedies permitted, including rescission and recovery of the consideration. This was the remedy allowed in *Dickey v. Carter*, D.Mass., 392 F.Supp. 1055 (1975). Of course, interest is also permitted under the section. We reverse and remand for a reconsideration of the remedy of rescission for Peters.

The judgments of the trial court awarding Mahoney and M.D. possession of the Bellanca are reversed and remanded for further findings as outlined herein.

All the Justices concur.

HALL, Circuit Judge, sitting for MORGAN, J., disqualified.