Lyle AINSWORTH, Plaintiff
and Appellee,

v.

Leo T. ERCK and Judy K. Erck,
Defendants and Appellants,

and

Lincoln L. Ainsworth and Elaine A.
Ainsworth, Defendants and
Appellees.

No. 15065.

Supreme Court of South Dakota.

Considered on Briefs March 17, 1986.

Decided June 4, 1986.

Harlan A. Schmidt, Spearfish, for plaintiff and appellee.

Edward C. Carpenter, Rapid City, for defendants and appellants and defendants and appellees.

WUEST, Justice.

This is an appeal from a decree quieting title to a lot and building in Spearfish, South Dakota. We affirm.

In 1978, appellee Lyle Ainsworth (father) sold appellee Lincoln Ainsworth (son) a lot and building in Spearfish, South Dakota, under an oral contract. No down payment was made and son was to make payments whenever he could. Father reported the sale on his 1978 income tax return at $47,000, but continued to pay all real estate taxes, maintenance and repairs. Son took possession of the building and rented it, remitting some of the rental proceeds to his father and using the balance to live on.

Son operated a clothing store in Rapid City, South Dakota, where he met appellant Leo Erck (Erck), who successfully suggested that son obtain a real estate license through Erck's agency, with Erck as supervising broker. As part of a deal to list the son's business in 1979, Erck loaned him $15,000. Erck secured the note with a mortgage on the building without checking the title, either by ordering title insurance or by examining an abstract. Erck has been licensed as a real estate salesman since 1970 or 1971 in North Dakota and as a broker in South Dakota since 1975. He testified his wife probably drew the mortgage.

Although he collected the rents from the property, son only made full payments to his father for one or two years of the six years from 1978 to 1984. The rest of the time he made inadequate payments or none at all. By the time father learned of the mortgage in 1982, son had missed many payments, as he was using the rent to live on.

At trial, father testified the oral contract for deed between himself and son remained in effect from the sale in April, 1978,

through 1984. He further testified that son surrendered the property to him in 1984. A quit claim deed from son to father dated November 1, 1984, was produced at trial.

The property was listed for sale by son, as owner, on September 26, 1984. After offers and counteroffers, the property was sold on November 1, 1984. Son signed the preliminary papers; however, the final contract was signed by father. Son testified that father had asked him to sell the property for father.

In October 1984, Erck was requested to release the mortgage on the premises. When he refused father commenced this quiet title proceeding against Erck, son, and their wives. Ercks answered and after a court trial a decree was entered, quieting title in father. The Ercks appealed.

Ercks' first claim of error concerns the trial court's Finding of Fact IV, which provides:

For tax years 1978 through 1983, plaintiff reported the oral transaction as an installment sale to Lincoln Ainsworth and reported payments of principal and interest totalling $28,711.00, which he in reality never received from defendant Lincoln Ainsworth.

■ They argue this finding is clearly erroneous because the evidence establishes some payments were made by son to father. This is true; however, the findings of fact later address those payments. In Finding of Fact VII, the court found that from 1978 to 1983 "with the exception of a few quarterly rent payments" son made no other payments to father. Based on these facts, the court entered a conclusion of law that son had "no estate or interest" in said real property. The court further held the mortgage was not a valid lien against the property.

■ There is conflicting evidence as to the amount of money father received from son, but the trial court's findings were within the realm of the evidence and we will not reverse unless findings are clearly erroneous. *Matter of Estate of Gosmire*,

331 N.W.2d 562 (S.D.1983); *Mobridge Community Industries v. Toure,* 273 N.W.2d 128 (S.D.1978).

In this final claim of error, Erck urges that father should be estopped from asserting Erck's mortgage was not a valid lien upon the premises. Father testified he was unaware of the mortgage until 1982 and the trial court agreed, holding he was unaware of the note or mortgage until several years after its execution. The court further found there was no evidence of fraud on the part of father. Although Ercks claim estoppel their argument urges fraud, which must be proven by a preponderance of the evidence. *Aschoff v. Mobil Oil Corp.,* 261 N.W.2d 120 (S.D.1977). Since father never knew about the mortgage until 1982, he cannot be charged with fraud when he sold the building to son nor when son executed the mortgage in 1979. Although son may be guilty of bad faith or fraud, that cannot be imputed to father and, since the court determined son had "no estate or interest" in the property, son did not have any equity upon which the lien could attach. Both issues raised by Erck are attacks upon the court's findings of fact which cannot be disturbed unless they are clearly erroneous. We do not find them clearly erroneous.

The judgment is affirmed.

MORGAN and SABERS, JJ., concur.

HENDERSON, J., dissents.

FOSHEIM, C.J., deeming himself disqualified, did not participate.

HENDERSON, Justice (dissenting).

I respectfully dissent.

This is a meritorious appeal. Defendant-appellee was authorized to enter into a mortgage, he executed a mortgage which was duly recorded, said mortgage was ratified by his father, Lyle Ainsworth-appellee, and thereafter both father and son had business dealings between themselves and others proving that the mortgage was real and that the son had a genuine equity in the property. Ercks, defendants-appellants, protected their record in this case by submitting findings of fact and conclusions of law based upon the oral testimony and exhibits herein, but same were rejected by the trial court.

Specifically, the trial court found that the father (plaintiff) had not received any payments on the oral contract for deed from his third-party defendant son and that the son therefore had acquired no equity at the time of its sale in November 1984. I am convinced that such a finding was clearly erroneous under the record of this case.

Further, specifically, the trial court also found that the plaintiff father, Lyle Ainsworth, appellee herein, and his son, Lincoln Ainsworth, third-party defendant and appellee herein, had not engaged in a course of fraudulent conduct, so as to estop the plaintiff father from asserting that the Ercks' mortgage was not a valid lien on the real property.

Ercks loaned Lincoln Ainsworth $15,000. As security, Ercks accepted a mortgage executed by Lincoln Ainsworth in the sum of $15,000 on the property described in a mortgage recorded on March 28, 1979. Lincoln Ainsworth specifically warranted on the mortgage that he was the owner of the real property in fee. Loan. Mortgage. Recordation.

On August 3, 1981, Lincoln Ainsworth listed the mortgaged property for sale, reflecting as a licensed realtor himself, that he was the owner of the property. His father, Lyle Ainsworth, was not mentioned as having any interest whatsoever in this property. Ercks started a lawsuit in 1982, against Lincoln Ainsworth, attempting to collect the $15,000. During the course of that separate litigation, the father, Lyle Ainsworth, testified that he had sold the mortgaged property by an oral contract for deed and that this contract had reverted unto him by virtue of default. During the course of this litigation, two realtors testi-

fied that Lincoln Ainsworth, the son, made statements unto them, as he listed the property in question for sale under a multiple listing contract, that he was the owner of the property. Representations were made by the son to at least one realtor that he was purchasing the property from his father, Lyle Ainsworth. The multiple listing contract was dated September 26, 1984; Lincoln Ainsworth listed himself as the owner of the property in question.

On October 12, 1984, Lincoln Ainsworth executed a counteroffer to an offer to purchase the property made by one H.I. Gibson. Father, Lyle Ainsworth, was not involved whatsoever. It was Lincoln Ainsworth, son, who signed the document as seller of the property and owner of the property. These exhibits are in this file. However, upon the closing of the sale on November 1, 1984, the father came forward and then signed the listing agreement and a final acceptance of the counter to a counteroffer. Ultimately, on November 1, 1984, the said Gibson purchased this property for $56,000 and made a $16,000 down payment thereon with a $40,000 balance payable on a contract for deed, same to be paid over a period of ten years and to bear interest of 10%.

The father acknowledged that he had a contract for deed, although oral, with his son and that it had remained in effect from April 1978 through the entire year of 1984. The father further testified he sold the building and lot to his son for $47,000 at 8½% interest on the unpaid balance and the son was to make payments when he was able to. Under subpoena, the father displayed his 1978 through 1983 federal income tax returns reflecting an installment sale and a schedule of the principal and interest payments made thereunder. These income tax returns reflect a purchase price of $47,000 and payments made

by the son to the father of $28,711.[1] Considering payments applied on the principal, it appears from the record, therefore, that the son, Lincoln Ainsworth, very definitely had an equity in this real estate of approximately $15,000 to $16,000.

Other memorandums in writing to establish the sale of this property and the equity of the son in the property, were the 1977 through 1983 federal income tax returns of the son, Lincoln Ainsworth. These returns establish that during each one of these years, he, Lincoln Ainsworth, claimed depreciation and expenses as owner of the land in question, same being a commercial lot and building at Spearfish, South Dakota. Father, Lyle Ainsworth, testified that he paid all of the real estate taxes but the son's tax returns reflected that he, the son, paid the real estate taxes. On the day before trial of this action, the son amended the income tax returns to which I have alluded, removing all reference to the purchase of this lot and building in question, claiming (a) there had been a "mistake" in his returns and (b) he did not own any interest in the building and lot as previously depicted on his returns. This testimony and conduct belie the cause of the Ainsworths.[2]

In October 1984, the Ercks were contacted and requested by a realtor, as well as the father's attorney, to execute a quitclaim deed and release the mortgage. Ercks indicated that they would do so if the sale proceeds were not delivered to Lincoln Ainsworth and an affidavit would be executed to that effect. This bore no fruit and soon litigation was under way.

SDCL 44–8–1.1 provides: "Any interest in real property which is capable of being transferred may be mortgaged." This would include an equitable interest of a contract vendee. That the equitable inter-

---

1. Verba sunt indices animi. Lat. Words (including documents) are the indices or indicators of the mind or thought.

2. Ah, for the life of a legal chameleon; oh, to have that unusual ability to quickly change in response to both external stimuli and internal factors. Quickly feeding, you see, on expediency.

est of a contract vendee is mortgagable, *see* 55 Am.Jur.2d *Mortgages* § 111 (1971). In South Dakota, an equitable interest in real property is subject to levy and execution in satisfaction of the legal obligations of a contract vendee. *Jordan v. O'Brien*, 69 S.D. 230, 9 N.W.2d 146 (1943). Therefore, Ercks are entitled to a lien against this property, per their mortgage of record, as pertains to any equitable interest in the property of the son, Lincoln Ainsworth. It is to be noted that the father produced, under subpoena, a record of payments received and buttressed said records with testimony that payments of principal and interest had been made by his son, Lincoln Ainsworth, pursuant to an oral contract for deed. Per quod, it was clearly erroneous for this court to enter a finding of fact contrary to this evidence. At a hearing for a motion for new trial, legal counsel for the father agreed that Finding of Fact IV was incorrect. Notwithstanding, the trial court persisted in entering an order which deemed the findings of fact and conclusions of law to be "consistent with the evidence" and it denied the motion for a new trial.

The trial court seems to be finding, and the father seems to be contending, that admissions of the father and the son can be disregarded.[3] This state has a long-established rule of evidence that a party cannot claim a more favorable version of the facts than facts which he presented by his own testimony. *Swee v. Myrl & Roy's Paving, Inc.*, 283 N.W.2d 570 (S.D.1979); *Connelly v. Sherwood*, 268 N.W.2d 140 (S.D.1978); *Drier v. Perfection, Inc.*, 259 N.W.2d 496 (S.D.1977); *Miller v. Stevens*, 63 S.D. 10, 256 N.W. 152 (1934). *See also*, 30 Am. Jur.2d *Evidence* § 1087 (1967); and 32A C.J.S. *Evidence* § 1040(3) (1964). Under the testimony, exhibits, and particularly the income tax records, it was clearly erroneous for the trial court to enter Finding of Fact IV. *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970). Here, the

findings and evidence are mutually repugnant. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Hobelsberger*, 85 S.D. at 289, 181 N.W.2d at 459 (citing *United States v. Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948) and Barron & Holtzoff (Wright) Federal Practice and Procedure—Rules Edition, § 1133). I am firmly convinced that a mistake has been made.

Deeming that this case is reversible upon this basis, I do not address the fraud issue.

---

3. Verba fortius accipiuntur contra proferentem. Lat. Words are to be taken most strongly against him who uses them.