Clifford RININGER, Plaintiff
and Appellee,

v.

BENNETT COUNTY SCHOOL
DISTRICT, Respondent and
Appellant.

Nos. 17189, 17202.

Supreme Court of South Dakota.

Considered on Briefs Jan. 9, 1991.

Decided April 10, 1991.

Linda Lea M. Viken, Finch, Viken, Viken and Pechota, Rapid City, for plaintiff and appellee.

Dennis H. Hill, Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for respondent and appellant.

WUEST, Justice.

The Bennett County School District appeals the circuit court judgment affirming the decision of the South Dakota Department of Labor that Cliff Rininger was entitled to reinstatement to a teaching position and damages. We affirm.

Cliff Rininger was a continuing contract teacher in the Bennett County School District. He was elementary education certified and taught grade levels six through eight while at the District. With some reservation, Rininger signed an employment contract with the District for the 1981–82 school year. Subsequently, he requested and was granted a leave of absence under School Board policy.

Rininger then accepted a teaching position with a school system in Alaska. In December 1981, he requested the District send his income tax forms to Alaska. In April 1982, Rininger filed written notice of his intent to return to the Bennett District. Although positions were open for which Rininger was qualified, the School Board refused to hire him. Rininger then contacted his union representative and attempted to file a grievance with the Board. The Board informed Rininger that he could not file a grievance because he was no longer considered an employee of the District. Rininger attempted to appeal this decision to circuit court under SDCL ch. 13–46; however, the sheriff failed to timely serve the necessary papers and the appeal was dismissed. Rininger then appealed to the Department of Labor, Labor and Management Division.

The Board maintains that Rininger deceived them as to the reasons for his leave of absence. According to Leo Gannon, District Superintendent, Rininger requested the leave of absence because his father had died recently and he wanted to be home with his mother. Superintendent Gannon told the School Board that this was the reason for Rininger's requested leave. Rininger submits, however, that he asked for the leave for personal reasons, based upon a personal conflict he was having with a teacher's aide employed by the District. Gannon was aware of the difficulties Rininger was having with the teacher's aide. Rininger did not know this staff member would not be returning to the District in her capacity as a teacher's aide in the 1981–82 school year. Although Rininger was considering employment in Alaska prior to approval of his leave of absence, he never communicated this to Gannon.

At Gannon's request, Rininger put his leave request in writing, but did not state his reasons for requesting leave. Rininger was never told there were conditions or limits on his leave of absence, or that he was prohibited from teaching while on leave. Rininger's leave of absence was never rescinded by the Board and he was never advised that he had violated the terms of his leave until he was refused employment upon returning to the District.

The Department of Labor determined the leave policy was "mandatory" and Rininger was therefore entitled to reinstatement with the School District. The Department ordered the District to pay Rininger the difference between the salary he would have received if teaching in the District and the salary he actually received while this action was pending, plus interest.

This decision was appealed by the District to circuit court. The court determined the leave policy was not "mandatory" and remanded the case to the Department for findings as to whether Rininger deceived Superintendent Gannon and the Board in his request for leave. If Rininger deceived the Board, such deceit would constitute a

breach of contract, *see* SDCL 13–43–15, and Rininger would no longer be considered an employee of the District. However, if there was no deceit, the Board's refusal to hire Rininger would be in error. The Department was also to determine the amount of prejudgment interest, if any, in the event it was determined Rininger did not deceive Gannon.

After rehearing, the Department concluded that Rininger did not deceive the Superintendent or the Board and was therefore entitled to personal leave and employment upon return to the District. It further concluded that Rininger was entitled to prejudgment interest in the amount of $17,725.20.

This decision was appealed to circuit court by the District. The court affirmed the Department's determination that Rininger was entitled to reinstatement. The court also held he was entitled to prejudgment interest calculated incrementally based upon his contract payment periods, with judgment interest to run from July 18, 1986.

The District appeals to this court and raises four issues:

I. Whether the Department improperly allocated and applied the burden of proof;

II. Whether Rininger deceived the School District in his request for a leave of absence, thereby breaching his contract and terminating his status as a tenured teacher;

III. Whether Rininger is entitled to damages and interest; and

IV. Whether Rininger's grievance was timely.

Rininger raises by notice of review:

V. Whether the trial court erred by finding the leave policy was "permissive" and reversing the Department's decision.

We deem it unnecessary to reach this notice of review issue under our holding.

### I.

On remand from the circuit court to determine whether Rininger deceived Super-intendent Gannon, the Department concluded that "[t]he District's seeking to get out of its contractual obligation to Rininger [by asserting deceit] represents an affirmative defense that the District must prove by a preponderance of the evidence." The circuit court affirmed this ruling. The District contends this is the wrong burden of proof and asserts the party alleging a violation (Rininger) carries the burden, not the nonmoving party.

In *South Dakota Board of Regents v. Heege*, 428 N.W.2d 535, 542 n. 3 (S.D. 1988), we noted that in an unfair labor practice action before the Department of Labor under SDCL ch. 3–18 and ch. 1–26, the burden of proof is on the party alleging the violation. We cited *General Drivers and Helpers Union v. Brown County*, 269 N.W.2d 795, 798–99, 803 (S.D.1978) and 51A C.J.S. Labor Relations § 561 as authority for this allocation of the burden of proof under SDCL ch. 3–18 and *Gourley v. Board of Trustees*, 289 N.W.2d 251, 253 (S.D.1980) as authority for actions under SDCL ch. 1–26. Rininger acknowledges in his brief that this is, indeed, a grievance brought pursuant to SDCL ch. 3–18 and ch. 1–26. We thus apply the burden of proof acknowledged in *Board of Regents, supra*.

Rininger's leave of absence was valid on its face: such leaves are authorized by School Board policy, Rininger's request was presented to and approved by the Board, Rininger was never informed he had violated the terms of his leave, and the Board took no action to rescind or otherwise invalidate it. Rininger requested reinstatement, but was refused employment for positions which were vacant and for which he was qualified. Under these circumstances, we hold that Rininger has carried his burden of proving his grievance. He has established he was on valid leave and was refused employment upon return. We therefore agree with the Department that the District's allegation of deceit constitutes an affirmative defense which must be proven by a preponderance of the evidence. *See Ainsworth v. Erck*, 388 N.W.2d 886 (S.D.1986); *Jennings v. Jennings*, 309 N.W.2d 809 (S.D.1981); *General*

*Elec. Credit Corp. v. M.D. Aircraft Sales, Inc.,* 266 N.W.2d 548 (S.D.1978); *Aschoff v. Mobil Oil Corp.,* 261 N.W.2d 120 (S.D. 1977).

## II.

The District challenges the Department's finding that Rininger did not deceive the Board in connection with his request for a leave of absence. The District submits it carried its burden of proving deceit as an affirmative defense and therefore the Department's finding to the contrary is clearly erroneous.

■ Questions of fraud and deceit are generally questions of fact. *Laber v. Koch,* 383 N.W.2d 490 (S.D.1986). In an administrative appeal, deference is accorded an agency's factual determination, and we review the record to determine whether the agency's findings of fact are clearly erroneous in light of all the evidence in the record. SDCL 1-26-36; *Karras v. State, Dep't of Revenue,* 441 N.W.2d 678, 679 (S.D.1989); *Permann v. South Dakota Dept. of Labor, Unemployment Ins. Div.,* 411 N.W.2d 113, 115-17 (S.D.1987). In applying the clearly erroneous standard, the appellate court determines whether, on the entire evidence, it is left with a definite and firm conviction that a mistake was made. *In re Estate of Hobelsberger,* 85 S.D. 282, 289, 181 N.W.2d 455, 459 (1970). We find support in the record for the Department's finding.

The Department made two factual inquiries with respect to deceit: (1) whether Rininger told Gannon he wanted the leave of absence to stay with his mother, and (2) whether Rininger's Alaskan employment was so certain before leave was granted that he was under an affirmative duty to inform the District. The Department found no evidence which made Gannon's testimony more credible than Rininger's, or vice versa. The fact that Gannon, in furtherance of his duties as Superintendent, told the School Board that Rininger wanted leave to be with his mother tends to refute the Department's finding. However, we are not left with a definite and firm conviction the Department was mistaken. The

evidence on either side of this issue was credible and capable of supporting inferences leading to either conclusion. The burden of proof is not sustained when the probabilities are equal. *King v. Johnson Bros. Const. Co.,* 83 S.D. 69, 74, 155 N.W.2d 183, 186 (1967). The District did not, therefore, carry its burden of proof and we affirm the Department on this factual inquiry.

Rininger testified he had not been hired by the Alaskan school district until after his leave request was granted. Although he had discussed employment with the Alaska school system prior to the granting of his request and prospects for employment were favorable, Rininger did not understand he was required to disclose this information to the District. Rininger did not know the teacher's aide would not be returning to school, and believed this personal conflict was sufficient "personal reasons" to warrant a leave of absence. No restrictions or stipulations were placed on his leave request and the leave policy contains no provision requiring an employee to disclose such information after a leave application is granted. These facts support the Department's finding that Rininger did not deceive the Board by not disclosing his possible Alaskan employment. We are not left with a definite and firm conviction a mistake was made.

## III.

### A.

The District asserts Rininger was not entitled to damages and interest. The District argues the Department is without authority to order the District to pay Rininger's salary differential while this matter was pending because this salary differential constitutes "back pay." The District relies on *Kierstead v. City of Rapid City,* 248 N.W.2d 363 (S.D.1976).

In *Kierstead,* a fired municipal police officer sought back pay because when hired, he had previous law enforcement experience and was promised $50 per month more than new officers without experience, but never received the additional

compensation. We held the Department was without authority to order payment of such back pay because the Department would be, in effect, setting the salary of a municipal officer. We held that under SDCL 3-18-15.2 the Department has authority to act only on grievances that do not involve the exercise of executive or legislative powers or the performance of a governmental function. The setting of salaries for municipal officers by the governing body of the municipality is such a legislative function. *Kierstead*, 248 N.W.2d at 366.

■ In the instant case, the ordered payment of Rininger's salary differential does not impermissibly invade any salary-setting legislative power or governmental function. The payment of his salary differential does not in any manner change the salary he would have been paid had the District hired him. *Kierstead* is therefore materially distinguishable and no impediment. In *General Drivers*, 269 N.W.2d at 804, we directed wrongfully discharged deputies to be compensated in the same manner as the Department did here:

> The deputies shall be compensated for any losses of pay they have suffered by reason of their discriminatory discharge, by paying them sums of money equal to that which they would normally have earned ... during the period from the date of discharge, ..., less their net earnings from other employment during the back pay period.

*See also N.L.R.B. v. Gullett Gin Co.*, 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951). We affirm the Department on this question.

### B.

Rininger was awarded prejudgment interest on his salary differential. The Department determined that interest should run from the beginning of each contract year. The circuit court modified the interest payments so as to commence running from the dates of payment of Rininger's periodic salary (his yearly salary was broken into equal monthly increments). The District contends neither method is correct

and argues that interest should be based on the difference in salaries from the end of the contract term.

■ SDCL 21-1-11 provides for the award of interest on damages which are certain:

> Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and *the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day*, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt. (Emphasis added.)

Rininger was a continuing contract teacher, which means he was entitled to renewal of his teaching contract every year. Under his contract, Rininger was paid his yearly salary in twelve equal, monthly increments. Accordingly, interest on each monthly salary differential should run from the date of each periodic salary payment he would have received from the District had he been hired. The right to recover damages and interest on his monthly salary differential vested in Rininger each month this action was pending. The fundamental purpose of SDCL 21-1-11 is to do justice to the party who has suffered a loss at the hands of another. *See Amert v. Ziebarth Const. Co.*, 400 N.W.2d 888 (S.D.1987). We believe the circuit court's interest calculation best accomplishes this goal and we affirm the court on this issue.

### IV.

■ The Handbook of Policies for the Bennett County Public Schools sets forth the time-line for grievance proceedings. It instructs in pertinent part that "whenever any employee [has] a grievance, [he] shall meet on an informal basis with the Superintendent within thirty days after the employee[ ], through the use of reasonable diligence[,] should have had knowledge of the occurrence that gave rise to the grievance." The School Board filled the last position available to Rininger at its June 7, 1982 meeting. The filling of this last vacancy gave rise to Rininger's grievance.

The Board's minutes of the June 7th meeting were published on June 17, 1982. Rininger testified he did not learn of this action until sometime in mid-July because he was out of the State. He filed his grievance on August 17, 1982.

■ The District asserts Rininger failed to timely file his grievance, thus precluding the Department's jurisdiction over the matter. The Department's jurisdiction is lost if the grievance is not timely filed in accordance with grievance procedures. *Schloe v. Lead–Deadwood Indep. School Dist. No. 106*, 282 N.W.2d 610, 614 (S.D. 1979).

The Department found as fact that Rininger timely filed his grievance. As we previously discussed, deference is accorded an agency's findings of fact and we review the record under the clearly erroneous standard. SDCL 1-26-36; *Permann*, 411 N.W.2d at 115–17. The record indicates that Rininger subscribed to the local newspaper about the time he left for Alaska and had the paper forwarded to him there. The record does not indicate Rininger was receiving the paper upon his return to South Dakota. After returning, Rininger periodically phoned or stopped in to discuss with Gannon future teaching positions. From these facts the Department could have found or inferred that Rininger was diligently seeking employment with the District and was diligent in acquiring the knowledge which formed the basis of his grievance. We are not left with a definite and firm conviction a mistake was made. We affirm on all issues.

HERTZ, Circuit Court Judge, Acting as a Supreme Court Justice, concurs.

SABERS, J., concurs specially.

MILLER, C.J., and HENDERSON, J., dissent.

AMUNDSON, J., not having been a member of the court at the time this case was considered, did not participate.

SABERS, Justice (concurring specially).

Rininger met his burden of proof under *Board of Regents v. Heege* because he proved the Board denied him a vacant position for which he was qualified while he was on valid leave. Therefore, he proved the Board violated its own policies. In other words, he established his grievance. The burden of going forward with the evidence then passed to the Board to show that the leave of absence was obtained by deceit. The Board failed to do this because its evidence of deceit, while very close, even equal, was insufficient to persuade the hearing officer or the circuit court. Therefore, in the final analysis, Rininger proved the violation or the grievance he alleged.* *Board of Regents v. Heege*, 428 N.W.2d at 542 n. 3.

MILLER, Chief Justice (dissenting).

I dissent. The Department, in direct contravention of settled law, placed the burden of proof on the nonmoving party, the District.

Rininger commenced this unfair labor practice action against District. It was, therefore, his burden to prove that District violated, misinterpreted, or inequitably applied District's written policies in failing to reemploy him. The issue centered around conflicting testimony of Rininger and District's superintendent, Mr. Gannon. The hearing officer found "no inconsistency that would make Rininger more credible than Gannon, or vice versa." Rather than finding that the evidence did not preponderate in favor of movant (Rininger), Department erroneously converted District's position into an "affirmative defense" and held in favor of Rininger.

This is contrary to the settled law in South Dakota. As we stated in *South Dakota Bd. of Regents v. Heege*, 428 N.W.2d 535, 542 n. 3 (S.D.1988),

[a] charge of unfair labor practice properly brought before the Department of

---

* Footnotes 1, 2 and 3 of Justice Henderson's dissent fail to comprehend that the Board could have required reasons in writing *before* issuing the leave of absence to Rininger, but it did not.

It simply issued the leave of absence. Therefore, Rininger did not have to prove *absence* of deceit.

Labor under both SDCL ch. 3–18 and ch. 1–26 would place *the burden of proof upon the party who alleged the violation. See, General Drivers, supra* at 798–99 and 51A C.J.S. Labor Relations § 561, as to SDCL ch. 3–18; and *Gourley v. Board of Trustees,* 289 N.W.2d 251 (S.D.1980) as to SDCL ch. 1–26. (Emphasis added.)

Here, Rininger is the one seeking to prove that he is entitled to damages and interest. Rininger is the movant and bears the burden of proving all matters essential to his claim. *South Dakota Bd. of Regents, supra. Peterson v. Hoftiezer,* 35 S.D. 101, 150 N.W. 934 (1915), relied upon by Department, is inapposite. *Peterson* deals with a promissory note where a maker pleads fraud as an affirmative defense. It certainly does not apply here.

HENDERSON, Justice (dissenting).

This decision is damaging to the school districts of this state. It follows on the heels of *Wessington Springs Ed. Ass'n. v. Wessington Springs Sch. Dist.,* 467 N.W.2d 101 (S.D.1991) (Henderson, J. dissenting). I have consistently maintained, for well over a decade, that the school boards should run the school districts and not agencies and judges. Unfortunately, I have seen the autonomy of the school boards eroded. The voters in this state choose their school board members from outstanding citizens. These citizens, as a duly elected board, have the right to manage the schools. Matters of teacher employment, as a general rule, rest exclusively and absolutely with the school board. *Fries v. Wessington School District No. 2–4,* 307 N.W.2d 875 (S.D.1981). Communities are losing their input into the needs and best welfare of school children and surfacing is a new legal culture engrossed in the school houses. It is a substitution of a false value. Rather, this language is supportive of a good school ethic:

> School boards are creatures of the legislature and are a part of the legislative branch of government. Therefore, the judiciary may not invade the province of the school board's decision making un-

less such decision making is done contrary to law.

*Strain v. Rapid City School Board,* 447 N.W.2d 332 (S.D.1989). Accord: *Moran v. Rapid City Area School Dist.,* 281 N.W.2d 595, 598 (S.D.1979). This school district's decision was not contrary to law. A school district has the administrative power to exercise discretion; as long as the district is legitimately and legally exercising its statutory duties, the courts may not interfere or supplant the district's decision making powers. *Schaub v. Chamberlain Board of Education,* 339 N.W.2d 307 (S.D.1983).

In an analysis of this case, we should consider that the district's decision—relating to Rininger—carries a presumption that it was made in good faith and the burden is upon Rininger—to overcome this presumption. *Schneider v. McLaughlin Ind. School District,* 90 S.D. 356, 241 N.W.2d 574 (1976); *Jones v. Sully Buttes Schools,* 340 N.W.2d 697 (S.D.1983).

With all of the above principles and precedent in mind, not to mention the specific holding in the *Heege* case relative to the burden of proof, the majority opinion has shifted the burden of proof onto the Bennett County School District. This is wrong.

Here, Rininger deceived the school district in his request for a leave of absence. He breached his contract. He should not prevail in his grievance. Rininger sought a job in Alaska which paid him $5,000 more than the salary he would have received in South Dakota; this deceitful conduct was at the same time that he provided a false reason for his leave. This deceitful conduct was perpetrated so that he could be assured of his teaching position in South Dakota when he decided to return to South Dakota. South Dakota has a teacher's "Code of Professional Ethics" now adopted via state statute, SDCL 13–43–25; this is codified at ARSD 24:08:03. Inter alia, it commands "[i]n fulfilling their obligations to the public, educators shall ... [n]ot exploit the local school district or governing board for private gain," ARSD

24:08:03:02(4).[1] The Department found the "... probability that Rininger told Gannon he wanted the leave to see his mother in Michigan is ... equally likely as not,"[2] there seems little doubt that Rininger failed to meet his burden to demonstrate that the school district's action was erroneous. Thus, the decision in favor of Rininger should be reversed. *See,* 48 Am.Jur.2d, Labor and Labor Relations § 1752 at 221 (1979): "... the employer is not required to convince the state labor relations board that the discharge was for good cause ... the burden is on the [complainant] to establish the [wrongfulness of the discharge] by substantial and legally credible evidence." The burden of proof is squarely upon the party who alleges that the school district acted illegally. *Gourley v. Board of Trustees of S. Dakota,* 289 N.W.2d 251, 253 (S.D.1980). In light of our former precedent, the lower court's decision should be reversed.

Clincher: It appears *undisputed* that Rininger did not tell Superintendent Gannon that he had, within the last few days, become interested in a teaching job in Alaska and would be actively pursuing such other employment. It is *undisputed* that Gannon told the school district that Rininger sought leave because his father died. It is *undisputed* that had Rininger told the truth, i.e., that he was taking a job in Alaska, that his leave would not have been granted.[3]

This decision is an injustice to a South Dakota School District; it weakens educational strength; it repudiates settled law; and it achieves an unconscionable result. I would reverse the Department and the trial court.

---

1. Justice Sabers' special concurrence is belied by the facts of this case and fails to make the necessary quantum leap of logic under the evidence testified to in the lower proceedings. It is simply conclusory in nature. It beggars the imagination as to how the quantum leap can be made that Rininger met his burden of proof when, as the Chief Justice has pointed out that the factfinder below could find "no inconsistency that would make Rininger more credible than Gannon, or vice versa."

2. A burden of proof "is not sustained when the probabilities are equal." *King v. Johnson Bros. Construction Company,* 83 S.D. 69, 155 N.W.2d 183, 186 (1967).

3. The Board granted Rininger's application on July 9, 1981, and requested that Rininger state the reasons, in writing. Superintendent Gannon relayed this to Rininger by telephone. Rininger, full well knowing that he was looking for work in Alaska and had made an application for a teaching job in Alaska, withheld this information from the Board and Superintendent Gannon and, instead, signed petitioner's exhibit 2, received in evidence, stating that he requested a leave of absence and expressed: "I understand that the same teaching position cannot be guaranteed upon my return." Shortly thereafter, Rininger was hired for the Alaskan job. Rininger "covered up" his wrongdoing. Rininger did not want to put it in writing because he was trying to hide his deceit.

The petition for review is dismissed.